Not Reported in F.Supp.2d
**(Cite as: 2002 WL 31060368 (D.Conn.))**

Only the Westlaw citation is currently available.

United States District Court, D. Connecticut.

Nader SALIB, Plaintiff,
v.
I.C. SYSTEM, INC., Defendant.

No. Civ.A.3:01-CV1083JCH.

July 24, 2002.

RULING ON DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT (DKT. NO. 10)

HALL, J.

**\*1** The plaintiff, Nader Salib, brings this case pursuant to the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 et seq, the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn.Gen.Stat. § 42-110a et seq, the Consumer Credit Reports Act ("CCRA"), Conn.Gen .Stat. § 36a-695 and the common law. The plaintiff alleges that the defendant, I.C. System, failed to properly investigate a debt allegedly owed by the plaintiff and, as a result, continued to misreport the status of the debt to consumer reporting agencies.

The plaintiff moved for the transfer and consolidation of this action with the pending case of *Salib v. I.C. System, Inc.,* Case No. 3:99-cv-2311 (TPS) ( "previously filed action"), currently before Magistrate Judge Smith on consent for all purposes, because the two cases are based on a common nucleus of operative facts. The defendant opposed the transfer and sought summary judgment on the grounds that the plaintiff's case unlawfully splits a cause of action and that the claims brought in this case should have been brought in the previously filed action. Unable to transfer a case to a magistrate judge for all purposes without the consent of both parties, which consent was not obtained, the court denied plaintiff's motion on May 20, 2002. For the reasons stated below, defendant's motion for summary judgment is also DENIED.

I. BACKGROUND

The plaintiff, Nader Salib ("Salib"), received chiropractic treatment from a Dr. O'Connell and was charged $220 for the services. After an unsuccessful attempt to process the charges through Salib's insurance, Dr. O'Connell placed the debt for collection with the defendant, I.C. System, Inc. According to the defendant, the doctor represented that the debt was valid and owed and did not indicate to the defendant that Medicaid/Title XIX was involved.

I.C. System notified Salib of the debt. Salib responded by sending a letter to I.C. System, claiming that the debt was disputed. Salib informed I.C. System thereafter via telephone that the debt was covered by Medicaid and therefore could not be collected. Both before and after this communication with Salib, I.C. System reported to credit agencies that the debt was unpaid and disputed.

In this action, Salib claims that, because the debt was covered by Title XIX, I.C. System could not collect it and therefore should not have reported it at all. Salib claims that I.C. System's failure to investigate whether or not the debt was covered by Title XIX violated its obligations under the Fair Credit Reporting Act.

In the previously filed action, Salib brought claims arising out of the same disputed debt under the Fair Debt Collection Practices Act. Ruling on plaintiff and defendant's cross motions for summary judgment, Magistrate Judge Smith held that liability under those claims hinged "upon whether the defendant knew or should have known that the information it was conveying to the credit reporting services was false." Ruling on Cross Motions, *Salib v. I.C. System, Inc.,* Case No. 3:99 CV 2311.

II. DISCUSSION

A. The Rule Against Claim-Splitting

**\*2** The rule against claim splitting is well-established. The rule "prohibits a plaintiff from prosecuting its case piecemeal, and requires that all claims arising out of a single wrong be presented in one action." *Myers v. Colgate-Palmolive Company,* 102 F.Supp.2d 1208, 1224 (D.Kan.2000) (citations omitted). A district court has the authority, "as part of its general power to administer its docket, [to] stay or dismiss a suit that is duplicative of another federal court suit."

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Not Reported in F.Supp.2d
(Cite as: 2002 WL 31060368 (D.Conn.))

*Curtis v. Citibank, N .A.,* 226 F.3d 133, 138 (2d Cir.2000).

The rule against claim-splitting requires that two causes of action must be joined in one suit if "the evidence necessary to prove one cause of action would establish the other." *United States v. The Haytian Republic,* 154 U.S. 118, 124 (1894). The Second Circuit has held that claim splitting will lead to preclusion where "the same or connected transactions are at issue and the same proof is needed to support the claims in both suits, or, in other words, whether the facts essential to the second suit were present in the first suit." *Curtis,* 226 F.3d at 139. A dispositive motion based on improper claim-splitting "need not-indeed, often cannot-wait until the first suit reaches final judgment." *Hartsel Springs Ranch v. Bluegreen Corp.,* No. 00-B- 1653, 2002 WL 1554456 at *3, n. 1 (10th Cir. July 16, 2002). As a result, "in the claim-splitting context, the appropriate inquiry is whether, assuming that the first suit were already final, the second suit could be precluded pursuant to claim preclusion." *Id.*

"Because of the obvious difficulties of anticipating the claim or issue- preclusion effects of a case that is still pending," a district court has a number of options when faced with duplicative litigation, including to "stay the second suit, dismiss it without prejudice, enjoin the parties from proceeding with it, or consolidate the two actions." *Citibank,* 226 F.3d at 138. If claim-splitting is involved, simple dismissal is also appropriate because "plaintiffs have no right to maintain two actions on the same subject in the same court, against the same defendant at the same time." *Id.* at 138- 39.

B. Salib's claims under the FCRA and the FDCPA

In the two lawsuits pending before this district court, Salib has made substantially similar, though not identical, allegations against I.C. System. The material facts forming the basis for liability in both actions are intertwined. In this action, brought under the Fair Credit Reporting Act (FCRA), liability hinges on whether or not I.C. System failed to conduct an investigation with respect to Salib's claim that the debt was not owing. I.C. System's obligation to investigate under the FCRA is not triggered unless a credit reporting agency, not the plaintiff, notified it of the dispute. *Young v. Equifax Credit Information Services, Inc.,* No. 00-31254,

2002 WL 1277584 at *7 (5th Cir. June 11, 2002).

*3 In the previously filed action, liability under the Fair Debt Collection Practices Act (FDCPA) depends on whether the defendant knew or should have known that the information it was conveying to the credit reporting services was false. A number of factors, including whether or not a credit reporting agency notified I.C. System of the dispute, could potentially affect the determination of liability under the FDCPA.

As a result, it is not possible for the court to anticipate whether the facts necessary to prove plaintiff's cause of action under the FCRA will be established in the context of his FDCPA claim. Therefore, the court cannot determine whether "the facts essential to the second suit [are] present in the first." *Curtis,* 226 F.3d at 139. Because the court cannot predict the preclusive effect of the previously filed action involving plaintiff and defendant, defendant's motion for summary judgment (Dkt. No. 10) is DENIED.

III. CONCLUSION

For the reasons stated above, defendant's motion for summary judgment (Dkt. No. 10) is DENIED. Because the previously filed action may have a preclusive effect on this case, however, the court hereby orders this case, pending the outcome of the previously filed action, dismissed without prejudice to the plaintiff moving to reopen within 30 days following judgment in the previously filed action.

SO ORDERED

2002 WL 31060368 (D.Conn.)

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Not Reported in F.Supp.
1992-2 Trade Cases P 69,973
(Cite as: 1991 WL 425379 (D.Ariz.))

Page 1

H

United States District Court,
D. Arizona.

IN RE DUAL-DECK VIDEO CASSETTE
RECORDER ANTITRUST LITIGATION
(Go-Video, Inc.)
v.
MATSUSHITA ELECTRIC INDUSTRIAL CO.,
LTD., et al.

MDL No. 765 PHX RCB.

Jan. 7, 1991.

Memorandum and Order

BROOMFIELD, District Judge.

*1 This is the second antitrust action plaintiff has
brought against these same defendants. In the
original action ("Go-Video I"), which is still
pending, plaintiff alleged that defendants conspired
to prevent plaintiff from manufacturing and
marketing a dual-deck VCR. At a time near the
close of discovery in Go-Video I, plaintiff moved
for leave to amend its complaint to add claims that
(1) defendants conspired to monopolize the entire
consumer electronics industry worldwide in
violation of sections 1 and 2 of the Sherman Act;
and (2) defendants' affirmative defense concerning
the validity of Go- Video's patent was sham
pleading and thus not entitled to immunity under the
Noerr-Pennington doctrine. The court denied
plaintiff leave to amend the complaint on the basis
that: (1) adding the claims would be "futile
inasmuch as they would eventually be subject to
meritorious motions to dismiss;" and (2) the claims,
added after close of discovery, would have greatly
expanded the scope of the case and delayed
resolution of issues already before the court. Order
in Go-Video I entered April 17, 1989.

After the court denied leave to amend in Go-Video
I, plaintiff brought this second action ("Go-Video
II"). The complaint in this action includes the
claims plaintiff was not allowed to bring in the third
amended complaint in Go- Video I, as well as
claims for antitrust conduct concerning the
dual-deck VCR occurring since Go-Video I was
filed and claims for trademark infringement and

unfair competition.

All defendants have joined in a motion to dismiss
plaintiff's complaint [FN1] and a motion to strike
certain allegations. Defendant Sharp also has filed
a separate motion to dismiss on res judicata
grounds, and Sanyo has filed a separate motion to
strike and dismiss. All the motions were fully
briefed by the parties and oral argument was heard
on September 24, 1990. [FN2]

I. *Joint Defendants' Motion to Dismiss*

Defendants have moved to dismiss plaintiff's
complaint on several grounds: (1) that the
complaint constitutes impermissible claim-splitting; (2) that
Go- Video has no standing under anti-trust statutes
to sue as to consumer electronic products other than
the dual-deck VCR (the "CEP claims"); (3) that
defendants' affirmative defense filed in Go-Video I
which alleged invalidity of Go-Video's patent, is
immune from application of the antitrust laws under
the Noerr-Pennington doctrine and has not lost that
protection by virtue of being a sham pleading (the
"sham pleading claim"); and (4) that defendants'
use of the term "VCR-2" does not infringe
Go-Video's trademark, because the use is
descriptive only and protected by the "fair use"
doctrine.

A. *Claim-splitting*

1. *Claims for conduct occurring before the filing of
Go-Video I*

Defendants contend that the rule against splitting a
cause of action bars plaintiff from bringing any
claims in Go-Video II that could have been brought
in Go-Video I. Thus, plaintiff may not bring in this
separate action the CEP and sham pleading claims
that the court denied plaintiff leave to add to the
complaint in Go-Video I.

*2 Plaintiff stated in the complaint that this action
was filed as a result of the court's denial of leave to
amend in Go-Video I. See Complaint, at 3.
Plaintiff now contends, however, that the claims in
Go-Video II are different from those plaintiff
sought to add in Go-Video I in that: (1) the claims
in this case cover acts that occurred after the second
amended complaint was filed in Go-Video I (April
20, 1988); or (2) the claims involve products other

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Not Reported in F.Supp.
1992-2 Trade Cases P 69,973                                                    Page 2
(Cite as: 1991 WL 425379 (D.Ariz.))

than the dual-deck video equipment to which the court limited the scope of Go-Video I. Plaintiff thus argues that it should be allowed to bring a claim for all conduct concerning the dual-deck VCR that occurred after filing of the second amended complaint in Go-Video I on April 20, 1988, and to bring the CEP claims that were disallowed in Go-Video I for the entire time period preceding the filing of Go-Video I until the present. Plaintiff also argues that the sham pleading claim should be allowed in Go-Video I, because it alleges conduct occurring after filing of the original complaint in Go-Video I in June, 1987.

The Supreme Court stated the rule against splitting a cause of action in *United States v. Haytian Republic*, 154 U.S. 118, 125 (1894). The rule prohibits a plaintiff from prosecuting its case piecemeal. *Id.* Whether a plaintiff will be allowed to refile claims it was prevented from adding to a prior lawsuit depends upon whether refiling would frustrate the policies underlying the res judicata doctrine: relieving parties of the cost and vexation of multiple lawsuits, conserving judicial resources, preventing inconsistent decisions and encouraging reliance on judicial decisions. *Adolph Coors Co. v. Sickler*, 608 F.Supp. 1417 (1985). A decision denying leave to amend that was based on prejudice to the defendants and dilatoriness in bringing the claims plaintiff sought to add are the sort of grounds that should bar bringing those claims in a later action. *Id.* at 1431 (citing *Horner v. Ferror*, 362 F.2d 224, 230 (9th Cir.1985).

The court denied plaintiff's motion for leave to amend in Go-Video I, because of the effect on the litigation of adding such broad new claims so close to the end of discovery. In referring to the futility of adding claims that would be subject to "meritorious motions to dismiss," the court also recognized plaintiff's serious standing problems with regard to the CEP claims. The standing issue affected the court's exercise of its discretion not to allow such claims so late in the litigation in that the court was unwilling to allow derailment of the ongoing litigation by the addition of claims plaintiff may not even have had standing to bring. The court would not have denied plaintiff leave to amend earlier in the litigation, however, despite the possibility that defendants might have succeeded in a motion to dismiss on the basis of standing.

Defendants rely on *Oxbow Energy, Inc. v. Koch Industries, Inc.*, in which the court held that plaintiffs were barred from filing a new lawsuit after the court in an earlier action had denied them leave to amend their complaint to add those claims. *Oxbow Energy, Inc. v. Koch Industries, Inc.*, 686 F.Supp. 278, 282 (D.Kan.1988). Accord *Nilsen v. City of Moss Point, Miss.*, 701 F.2d 556, 563 (5th Cir.1983) (denial of leave to amend solely because of plaintiff's failure to bring a related claim in a timely manner bars a future action). In *Oxbow*, as in this case, no final judgment had been rendered in the earlier action. Allowing the second action, the court stated, would not only defeat the purposes of the rule against claim-splitting but also effectively reverse the trial court's denial of leave to amend. The "absurd" result might then be consolidation of the new case with the original action and effective reversal of the judge's denial of leave to amend. *Id.* at 282. The same result would occur if the court allowed plaintiff to bring the CEP and sham pleading claims in this action, after having denied plaintiff leave to amend to add those claims in Go-Video I.

*3 Comment b to section 25 of the Restatement (Second) of Judgments states that:

A mere shift in the evidence offered to support a ground held unproved in a prior action will not suffice to make a new claim avoiding the preclusive effect of the judgment. It is immaterial that the plaintiff in the first action sought to prove the acts relied on in the second action and was not permitted to do so because they were not alleged in the complaint and an application to amend the complaint came too late.

Restatement (Second) of Judgments § 25 comment b (1982). The Eighth Circuit applied this rule in *Poe v. John Deere*, 695 F.2d 1103, 1107 (8th Cir.1982). *Poe* upheld summary judgment dismissing the action on grounds for res judicata. In opposing the motion, the plaintiff admitted that the "facts and transactions at issue" were the same as those at issue in *Poe I*. *Id.* The court rejected plaintiff's argument that the theories of recovery she presented in *Poe II* had been unavailable to her in *Poe I*, because her motion to amend the complaint was denied as untimely and plaintiff had failed to appeal that decision. *Id.*

Thus, plaintiff is barred from bringing any claims in Go-Video II that are part of the same cause of

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Not Reported in F.Supp.
1992-2 Trade Cases P 69,973
(Cite as: 1991 WL 425379 (D.Ariz.))

Page 3

action as that of Go-Video I. The Ninth Circuit has identified four criteria for determining when successive lawsuits involve the same cause of action:

* * *

(1) whether rights or interest established in the prior judgment would be destroyed or impaired by prosecution of the second action;
(2) whether substantially the same evidence is presented in the two actions;
(3) whether the two suits involve infringement of the same right; and
(4) whether the two suits arise out of the same transactional nucleus of facts. [citation omitted] "The last of these criteria is the most important." [citation omitted]

*C.D. Anderson & Co., Inc. v. Lemos*, 832 F.2d 1097, 1100 (9th Cir.1987). See also *Constantini v. Trans World Airlines*, 681 F.2d 1199, 1201-02 (9th Cir.1982). Analysis of Go-Video's claims under the *Anderson* criteria leads to the conclusion that the CEP claims preceding the second amended complaint are transactionally related to the Go-Video I action.

As to the first criterion, plaintiff expressly stated in Go-Video I that it could rely solely on evidence concerning the dual-deck conspiracy to prove the CEP claims. That statement indicates that if defendants prevailed in Go-Video I by proving that they did not conspire to prevent Go-Video from entering the dual-deck VCR market, they will simultaneously prove that they did not conspire as to the other products as well. A subsequent action concerning the conspiracy as to CEPs only would thus present the possibility of an inconsistent result. Under the first of the *Anderson* criterion, therefore, the claims in the two actions should be considered one cause of action.

The same conclusion results from application of the second criterion. Plaintiff stated in its motion for leave to file the third amended complaint in Go-Video I that it would rely on the evidence already presented in that case to prove the additional claims. See Exhibit D to Motion to Dismiss. Plaintiff admits in the Go-Video II complaint that plaintiff brought this action because it was not allowed to amend the Go-Video I complaint. Complaint at 3. Plaintiff's counsel also stated orally during the Go-Video I contempt hearing that Go-Video I and II involved "the same

dispute, the same parties, really the same issues...." Defendants' Reply in Support of Motion to Dismiss, at 4 (citing Transcript of Hearing on April 23, 1990 in Go-Video I, at 13).

*4 Plaintiff's attempt to bring these claims in the earlier action on the basis that they were based on common facts and law would not necessarily bar them from bringing the same claims in a separate suit. *Petromanagement Corp. v. Acme-Thomas Joint Venture*, 835 F.2d 1329 (10th Cir.1988). Plaintiff has argued, however, that if allowed to proceed in Go-Video II, plaintiff also should be allowed to use the evidence accumulated in Go-Video I regarding the alleged dual-deck conspiracy to prove its CEP claims for the same time period. Response at 10-12. Plaintiff contends that its intended reliance on that evidence should not be regarded as an indication that the dual-deck and CEP claims are parts of the same cause of action. *Id.*

The court agrees that under *Petromanagement*, plaintiff's attempt to bring the CEP claims in Go-Video I would not estop plaintiff from arguing now that the CEP claims are not part of the same cause of action as in Go-Video I. The court nevertheless considers plaintiff's assertions that they both would be proved by the same evidence to be an important factor in determining whether the claims are part of a single cause of action. Plaintiff's representation to the court in Go-Video I that it would rely *entirely* on the evidence in that case to prove the CEP claims indicates that the bulk of plaintiff's evidence, at least as to those claims, will be the same as that used to prove the dual-deck conspiracy in Go-Video I. Reliance on the same evidence to prove purportedly different claims is an indication that the claims are part of the same cause of action.

The third *Anderson* criterion also would support barring a new action on CEP claims that could have been included in Go-Video I. The right to do business free from the effects of defendants' antitrust conspiracy is the same whether the effect of such a conspiracy is on plaintiff's dual-deck business or its potential business as to other CEP claims.

Finally, the fourth *Anderson* criteria, that the suits arise out of the same transactions nucleus of facts,

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Not Reported in F.Supp.
1992-2 Trade Cases P 69,973
(Cite as: 1991 WL 425379 (D.Ariz.))

Page 4

appears to be met as well. Plaintiff appears to be alleging only one conspiracy in both Go-Video I and Go-Video II: an agreement to keep Go-Video out of the consumer electronics market, including the market for the dual-deck VCR. The Restatement (Second) of Judgments states that determination of what constitutes a transaction must be made "pragmatically," weighing:

whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.

Restatement (Second) of Judgments § 24. Plaintiff's repeated statements that it will rely on evidence of agreements that pertained to both dual-deck and other consumer products in Go-Video II, as they would have relied exclusively in Go-Video I had they been allowed to amend the complaint, strongly suggests that the facts of the two cases are "related in time, space, origin, or motivation." In this case they appear to be related in all four respects.

*5 Under the above analysis, the rule against claim-splitting, based on the doctrine of res judicata, precludes plaintiff from bringing a separate action on any antitrust claims relating to both the dual-deck VCR and other CEP products that could have been brought in Go-Video I, had the motion to amend the complaint to add those claims been brought earlier in the litigation.

2. *Claims as to conduct occurring after filing of the second amended complaint in Go-Video I* [FN3]

Plaintiff further opposes defendants' claim-splitting argument on the basis that conduct occurring after the filing of Go-Video II constitutes a separate cause of action from that of Go-Video I. Plaintiff relies on Supreme Court and Ninth Circuit holdings that antitrust conduct occurring after the filing of a previous lawsuit that could not have been included in that suit, can form the basis of a subsequent action even if the acts form part of " 'essentially the same course of wrongful conduct.' " *Lawlor v. Nat'l Screen Service Corp.*, 75 S.Ct. 865 (1955). Accord *Harkins Amusement Enterprises v. Harry Nace Co.* [1989-2 TRADE CASES ¶ 68,852], 890 F.2d 181, 183 (1989). Based on its authority, plaintiff contends that it should be allowed to bring claims in this subsequent action for any antitrust conduct

occurring after Go-Video I was filed, including conduct related to the dual-deck VCR. Defendants counter that in refusal to deal cases the injury accrues to plaintiff when defendant makes a final decision not to deal. Repeated refusals after that date do not constitute separate causes of action because they do not cause additional injury. Reply at 5-6 (citing *In re Multidistrict Vehicle Air Pollution* [1979-1 TRADE CASES ¶ 62,529], 591 F.2d 68, 72 (9th Cir.1979).

In cases concerning a continuing conspiracy, any overt act in furtherance of the conspiracy that inflicts new injury on the plaintiff constitutes a separate cause of action. *Zenith Radio Corp. v. Hazeltine Research, Inc.* [1971 TRADE CASES ¶ 73,484], 401 U.S. 321, 338, 91 S.Ct. 795, 806, 28 L.Ed.2d 77, --- (1971). In refusal to deal cases, the question of whether a subsequent overt act causes new injury depends upon whether all of plaintiff's injury resulted from the initial refusal to deal. [FN4] If defendant's refusal was "irrevocable, immutable, permanent and final" plaintiff must recover in one action all damages that flowed from that act. *In re Multidistrict Vehicle Air Pollution*, 591 F.2d at 72. If the initial refusal to deal was not final, however; that is, if defendant left open the possibility of retracting its initial decision and dealing with plaintiff in the future, any subsequent refusal to deal by defendant would be a new source of injury to plaintiff and form the basis for separate cause of action. *See id.* at 71.

Thus, the central issue regarding whether plaintiff may bring this action based upon acts occurring after filing of the second amended complaint on April 20, 1988, depends upon whether defendants' alleged refusal to deal as to both the dual-deck VCR and the other CEPs was final. The finality of a refusal to deal may be determined in a summary judgment proceeding. In *In re Multistate Vehicle Air Pollution*, for example, the court found that the defendant auto manufacturers' refusal to purchase plaintiff's auto emission device was necessarily final and irrevocable." *Id.* at 72. In that case, however, the requirements for integrating parts like the device at issue into the full auto design would have prevented plaintiff from marketing its device after the initial refusal, even if defendants engaged in no further acts of conspiracy after the initial refusal to deal. *Id.* at 72.

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Not Reported in F.Supp.
1992-2 Trade Cases P 69,973
(Cite as: 1991 WL 425379 (D.Ariz.))

Page 5

**\*6** Defendants have cited no evidence that the alleged initial refusal to deal in this case was similarly final and permanent and the source of all injury plaintiff might have suffered. Defendants contend that plaintiff is bound to the position taken in its response to defendants' Go-Video I motions for summary judgment that defendants' refusal to deal was so "inflexible and adamantine" that any further demands by plaintiff would have been futile. Reply at 6 (citing Plaintiff's Opposition to Defendants' Separate Motions Regarding the Demand Issue in Go-Video I). The court does not consider plaintiff's characterization of defendants' conduct as evidence that the refusal actually was final and irrevocable. In fact, in denying defendants' motion for summary judgment on the demand issue, the court rejected plaintiff's argument that it considered further efforts to locate a manufacturer to be futile. Order of July 25, 1990, at 60.

Defendants rely upon the Ninth Circuit *Orgell* case in contending that defendants' alleged refusal to deal was necessarily final, because repetition of a final refusal to deal causes no new injury and therefore cannot serve as the basis for a new claim. Reply at 5-6 (citing *David Orgell, Inc. v. Geary's Stores, Inc.* [1981-1 TRADE CASES ¶ 63,941], 640 F.2d 936, 938 (9th Cir.1981), cert. denied 454 U.S. 816 (1981). In *Orgell*, the court upheld summary judgment for defendants where the district court had determined that a china manufacturer's refusal to deal with plaintiff was final and that subsequent refusals of requests to buy defendant's product made over a twelve- year period were merely "reaffirmation[s] of the original decision not to deal with plaintiff." *Id.* at 938. As the Ninth Circuit later noted, however, the brief factual summary in the *Orgell* opinion does not indicate the basis for the lower court's determination that the initial refusal to sell to plaintiff was final, that is, that the initial refusal caused all of plaintiff's injury. *Hennegan v. Pacifico Creative Service, Inc.* [1986-2 TRADE CASES ¶ 67,313], 787 F.2d 1299, 1301-02 (9th Cir.1986). Thus, the *Orgell* opinion does not provide a sound basis for determining whether the initial refusal to deal in this case was final, which in turn would determine whether subsequent refusals to deal may serve as separate causes of action.

Although the evidence may show that the initial

refusal to deal necessarily resulted in all of plaintiff's injury as in *In re Multistate Vehicle Air Pollution,* the parties in this case have thus far presented no evidence on the issue of whether the alleged refusal to deal was final and any subsequent requests by plaintiff were therefore merely "forlorn inquiries by one all of whose reasonable hopes had been previously dashed." *Id.* at 72. Thus, the court will deny defendants' motion to dismiss as to claims based on any antitrust conduct related to either the dual-deck VCR or CEPs for which plaintiff could not have recovered in Go-Video I, that is, as to conduct occurring after April 20, 1988, the date of the second amended complaint.

**\*7** Plaintiff argues that the sham pleading claim also concerns conduct that occurred after filing of the Go-Video I complaint and thus under *Lawlor* and *Harkins,* plaintiff should be allowed to bring that claim in a separate action. Response at 4. The rule against claim-splitting bars plaintiff from bringing the sham litigation matter up again in Go-Video II, however. The sham pleading claim certainly was transactionally related to the claims of Go- Video I, and the claim could have been brought in plaintiff's second amended complaint. The sham pleading claim is therefore barred as well.

B. *Standing to sue on the CEP claims*

Defendants argue that plaintiff has no anti-trust standing to bring the claims related to CEPs, [FN5] because they had and have no business or property that could be harmed by a conspiracy as to any products other than the dual- deck VCR.

1. *Consideration of matters outside the pleadings*

Defendants' argument depends in part on information contained in documents outside the pleadings, primarily Go-Video's corporate securities law filings. Consequently, plaintiff contends that Rule 12(b) requires the court to treat the motion to dismiss for lack of standing as a motion for summary judgment. Rule 12(b) requires such treatment if such matters are "presented to and not excluded by the court."

The Ninth Circuit has held that the court may take judicial notice of facts outside the pleadings, administrative records and other "matters of public record" without converting the motion to a motion

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Not Reported in F.Supp.
1992-2 Trade Cases P 69,973
**(Cite as: 1991 WL 425379 (D.Ariz.))**

Page 6

for summary judgment. *Mack v. South Bay Beer Distributors, Inc.,* 798 F.2d 1279, 1281 (9th Cir.1986). The securities filings upon which defendants rely in their motion may be considered matters of public record and also may be characterized as administrative records. Plaintiff cites a recent Ninth Circuit decision, however, in which the lower court's consideration of securities filings required conversion of the motion. *Hal Roach Studios v. Richard Feiner and Co.,* 896 F.2d 1542, 1550 (9th Cir.1990). Although in *Hal Roach* the lower court had considered a party's declaration as well as the securities filings, the Second Circuit has held squarely that a district court erred by considering a party's annual report and other corporate documents without converting the motion to dismiss to a motion for summary judgment. *Goldman v. Belden,* 754 F.2d 1059, 1066 (2nd Cir.1985). Thus, the court cannot consider the attachments to the motion or response, or the arguments based on those documents, without converting defendants' motion on this issue to a motion for summary judgment.

The court considers the attachments to the motion and response to be integral to their arguments. The court therefore will convert the joint motion to dismiss, as to standing, to a motion for summary judgment, rather than ruling on the motion without considering matters outside the pleadings, as permitted by the rule. This order also grants defendants' motion to dismiss claims that could have been brought in Go-Video I, however, which includes the CEP claims. Thus, defendants' converted motion will concern only plaintiff's standing as to CEP claims based on acts occurring after April 20, 1988, the date the second amended complaint was filed in Go-Video I.

**\*8** Plaintiff contends that, if the court decides to treat the motion as one for summary judgment, defendants should be required to comply with Local Rule 11, and that plaintiff should have the additional time for response that the rule allows. Plaintiff also claims that it should have the opportunity to obtain discovery on the standing issue.

Rule 12(b) requires that when a motion to dismiss is converted to a motion for summary judgment, all parties must be given a "reasonable opportunity" to present all relevant evidence. *Grove v. Mead*

*School Dist. No. 354,* 753 F.2d 1528, 1532 (9th Cir.1985). First, the parties generally must be given notice that the motion will be converted and an opportunity to respond. That notice requirement is not absolute: notice may be presumed where as here the opposing party also has submitted materials outside the pleadings for the court to consider. *Id.* at 1533. See also *Tahoe Sierra Preservation v. Tahoe Reg. Planning,* 611 F.Supp. 110 (D.C.Nev.1985) ("Council's admission that it has knowledge that matters outside the pleadings have been submitted constitutes notice in this Circuit....") Because the issue of standing in an antitrust case is somewhat complex, however, the court will not convert the motion without notice to the parties, which the court is providing by this order.

Plaintiff also has requested an opportunity to obtain discovery on the standing issue. The Ninth Circuit provides that parties shall have time for any necessary discovery after a motion to dismiss is converted. *Grove v. Mead School Dist. No. 354,* 753 F.2d at 1532. In addition, although no general right to full discovery exists under Rule 56(e), the Ninth Circuit has held that in summary proceedings concerning such complex issues as those involved in antitrust cases, the parties must be given the opportunity for full discovery. *Timberlane Lumber Co. v. Bank of America* [1977-1 TRADE CASES ¶ 61,233], 549 F.2d 597, 602 (9th Cir.1976).

The standing issue is not as complex as most other antitrust issues, however, and most of the evidence plaintiff needs to prove standing, that is, that Go-Video was injured in its business or property by defendants' antitrust conduct, should already be in plaintiff's own hands. Thus, the court will allow the parties only a limited time to take discovery on this issue. All discovery concerning the standing issue must be completed within 30 days from the date this order is entered. Within 30 days after discovery closes, defendants may, if they wish to pursue this issue summarily, file a supplemental motion on the issue, followed by a response and reply, all in compliance with Fed.R.Civ.P. 56 and Local Rule 11(l).

*2. Sufficiency of allegations of causal injury*

Defendants also argue that plaintiff has no standing as to certain of the allegations concerning CEPs, because plaintiff alleges no causal injury at all, to

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Not Reported in F.Supp.
1992-2 Trade Cases P 69,973
(Cite as: 1991 WL 425379 (D.Ariz.))

Go-Video or to anyone else. Those allegations include an agreement to fix CEP prices (paragraph 27(e)), an agreement to limit output and production of CEPs worldwide (paragraphs 27(e) and (f)), and an agreement to pool and combine CEP patents (paragraph 27(d) and (j)).

### (1) Price fixing

**\*9** Defendants argue that no antitrust injury could have resulted from price fixing, whether prices were alleged to have been set high or low. Motion at 20-21. Plaintiff could only have benefited from high prices because it could undersell defendants. If prices were set low, any injury would result from an increase, not a reduction of competition, and the injury would thus not be an antitrust injury. *Id.* The Supreme Court reached the same conclusion in *Matsushita Electric Industrial Co. v. Zenith Radio Corp.* [1986-1 TRADE CASES ¶ 67,004], 475 U.S. 574, 582-84, 106 S.Ct. 1348, 1354-55, 89 L.Ed.2d 538, ---- (1986).

Plaintiff argues without citation to authority that it need not establish injury resulting specifically from each aspect of the antitrust agreement. Rather, "Go-Video may show that defendants have fixed prices as part and in furtherance of their overall conspiracy to monopolize, some other part of which--the agreement to boycott--has caused injury to Go-Video." Response at 27. Plaintiff contends that defendants are confusing a cause of action with mere evidence offered to prove the conspiracy, and that it is not required to show injury resulting from every part of the conspiracy, as long as it shows injury from some aspect of it. *Id.* Defendants characterize plaintiff's argument as an attempt to "bootstrap" the price-fixing allegation onto the refusal to deal claim.

The holding of *Zenith Radio* effectively disposes of Go-Video's argument. The plaintiff in *Zenith Radio* argued that, even though certain of the conspiracies it alleged may not have been themselves grounds for recovery of antitrust damages, they nevertheless were "circumstantial evidence" of a very broad conspiracy that was cognizable. *Id.* at 584; 106 S.Ct. at 1354, 89 L.Ed.2d at ----. The court nevertheless analyzed each allegation separately and dismissed two of them because they could not have injured plaintiff. *Id.* The court rejected plaintiff's argument that the several activities were

part of one conspiracy, holding that whether they were seen as one conspiracy or several, an injury must be shown for each. *Id.* at 584, n. 7, 106 S.Ct. at 1354, n. 7, 89 L.Ed.2d at ----, n. 7. On the basis of *Zenith Radio,* plaintiff's allegations as to price fixing must be dismissed for lack of standing, because the acts alleged could not have resulted in any antitrust injury.

### (2) Limitation on output and production of CEPs

Paragraph 27(e) of the complaint claims that defendants have agreed to limit the output and production of CEPs as part of their boycott and refusal to deal with plaintiff. Defendants contend that plaintiff could not have been injured by any such limitation of output and production, because such a limitation would only foster competition. Motion at 22.

*Zenith Radio* again supports defendants' argument that the alleged conduct could not have caused antitrust injury, and that plaintiff therefore has no standing to make such a claim. Plaintiff again counters that it should be allowed to allege the conduct as part of a conspiracy by which plaintiff could have been harmed, even if plaintiff would be unable to recover separately for the specific acts alleged.

**\*10** Plaintiff argues that the agreement to limit output included an agreement "to exclude outsiders, including Go-Video, from their industry, by denying them access to essential patents and technology," and that any production limitation would implicitly require blocking new competition. Response at 26. The injury plaintiff alleges, however, really would be the result of a refusal to deal. An agreement not to deal with Go-Video may have resulted in part from an agreement to limit production, but the agreement to limit production would not itself have injured plaintiff. Thus, plaintiff has no standing to assert a separate claim for the alleged agreement to limit output and production.

### 3. Patent pooling

With regard to plaintiff's patent pooling claim in paragraph 27(d) of the complaint, defendants argue that: (1) plaintiff has alleged no injury related to the defendants' patent pooling, and (2)

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Not Reported in F.Supp.
1992-2 Trade Cases P 69,973
(Cite as: 1991 WL 425379 (D.Ariz.))

Page 8

cross-licensing would in fact promote competition; thus, any resulting injury would not be an antitrust injury. In response, plaintiff argues that allegations in paragraph 27(d) of the complaint that defendants have conspired to prevent Go-Video from obtaining any licenses under the pooled patents claim an injury caused by the patent pooling. Defendants state in their reply that they do not claim plaintiff lacks standing as to the refusal to license allegation, but only as to the patent pooling and cross-licensing agreements.

The patent pooling allegation is similar to the price fixing and output limitation claims in the sense that the agreement to pool patents and grant licenses under them to other manufacturers did not itself injure defendants. Unlike as to the other activities, however, plaintiff here alleges a separate agreement to grant licenses only to other conspirators and to refuse them to outsiders such as Go-Video. The agreement is not alleged as merely part of a refusal to deal; the alleged agreement, standing alone, could have injured plaintiff. In addition, the patent pooling conduct does not appear to be alleged as a separate claim for damages, but rather is integral to the refusal to license claim. Thus, plaintiff has alleged an injury casued by patent pooling activity.

Even if plaintiff can establish that it has been injured in its business or property by defendants' alleged antitrust violations, plaintiff has alleged sufficient injury to obtain standing only as to the patent pooling allegations. Claims based upon price fixing and limitations of output or production of CEPs must be dismissed for failure to allege any injury casued by antitrust violations.

C. *Sham pleading claim*

Defendants have moved to dismiss plaintiff's claim that defendants' affirmative defense asserting the invalidity of Go-Video's patent was a sham pleading not entitled to immunity under the *Noerr-Pennington* doctrine. Motion at 23; see Complaint ¶ 27(h). Under that doctrine, valid petitions for government action are immune from the antitrust laws. *Omni Resource Development Corp. v. Conoco, Inc.* [1984-2 TRADE CASES ¶ 66,138], 739 F.2d 1412, 1413 (9th Cir.1984). Immunity under the doctrine is lost if an action is filed solely to interfere with free competition and without a legitimate expectation of success. *Id.* at

1413.

***11** Defendants cite a Ninth Circuit case, *Mir v. Little Company of Mary Hospital,* for the proposition that the sham pleading exception does not apply to defensive pleadings. *Mir,* 844 F.2d 646, 649 (9th Cir.1988). They also argue that, even if the exception did apply, the affirmative defense as to patent validity was not a sham. Defendants assert that: (1) plaintiff's claim is unsupported by any factual allegations; and (2) the court in Go-Video I acknowledged the propriety of defendants' asserting that defense, by allowing defendants to amend their answer adding the defense and by recognizing its relevance to issues of liability and damages. Motion at 26.

Plaintiff argues that the sham exception may apply to a defensive pleading and cites in support a Fifth Circuit case, *In Re Burlington Northern, Inc.* [1987-2 TRADE CASES ¶ 67,650], 822 F.2d 518, 532-33 (5th Cir.1987). The facts of *Burlington,* however, differ markedly from this case. In *Burlington,* the pleadings clearly were filed both with knowledge that the defenses asserted were baseless and for an improper purpose. *Id.* at 532. The court in Go-Video I allowed defendants to add the defense and acknowledged its relevance to the issues of liability and damages. Motion at 26. Thus, the affirmative defense at issue cannot be said to be baseless. As to an improper purpose, plaintiff has alleged no facts in support of its conclusory allegation that defendants plead the affirmative defense for the purpose of "depleting Go-Video's assets and interfering directly with Go-Video's commercial relationships with consumers and investors." Complaint, ¶ 27(h).

Plaintiff also argues that the court's decision in Go-Video I that defendants lacked standing to bring the patent invalidity defense is evidence of a sham pleading. The court in *Burlington,* however, stated that lack of standing would only form the basis for determining a pleading to be sham if the party filing it had no reasonable basis for believing the court would find standing. *Id.* at 530. The court's determinations in Go-Video I noted above clearly indicate that defendants had at least some reasonable basis for believing they had standing to assert the defense. Thus, plaintiff's sham pleading claim must be dismissed even if it were not barred by the rule against claim-splitting.

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Not Reported in F.Supp.
1992-2 Trade Cases P 69,973
(Cite as: 1991 WL 425379 (D.Ariz.))

Page 9

### D. *Trademark infringement*

Plaintiff alleges in the complaint that Go-Video's registered trademark "VCR- 2" has acquired secondary meaning, that defendants have infringed the mark, and that the infringement was "pursuant to a combination and conspiracy." Complaint ¶¶ 30-49. Defendants have moved for dismissal of the trademark infringement claim on the ground that defendants' use of the words is descriptive only and thus protected by the "fair use" doctrine. Plaintiff's response is largely devoted to arguing that "VCR-2" [*sic* ] has obtained a secondary meaning and thus deserves protection under the trademark laws. Defendants' motion, however, did not raise the issue of whether the mark has achieved a secondary meaning and, in fact, defendants specifically concede the secondary meaning issue in their reply for purposes of this motion. Reply at 21. Defendants argue only that, even if "VCR-2" has achieved a secondary meaning, defendants' use of the term is merely descriptive and therefore is protected by the "fair use" doctrine.

*12 The "fair use" doctrine is grounded in section 33(b)(4) of the Lanham Trademark Act of 1946, 15 U.S.C. § 1115(b)(4). That section allows use of another's trademark where it is "a use otherwise than as a trade or service mark ... and [is] used fairly and in good faith only to describe to users the goods or services of such party." *Id.* Thus, the trademark holder can prevent use of the mark only as a trademark, that is, use of the mark to identify the product and distinguish it from the products of others. *Schmid Laboratories v. Youngs Drug Products,* 482 F.Supp. 14, 20 (D.N.J.1979).

The "fair use" doctrine protects the descriptive use of a trademark if: (1) the mark primarily conveys information about the product; (2) the mark is used discreetly; and (3) the product's brand name is prominently featured. See, e.g., *id.* The rule extends to alphanumeric descriptions similar to "VCR- 2." See, e.g., *Ideal Industries, Inc. v. Garner Bender, Inc.,* 612 F.2d 1018, 1024 (7th Cir.1978). In *Ideal Industries,* the court decided for purposes of a preliminary injunction that plaintiff's prominent use of the term "71B" on its electrical connector packages had given it a secondary meaning capable of trademark protection. *Id.* Yet, the court allowed defendant to continue its use of the same designation on its

packaging as long as the word "size" accompanied the term, making its use entirely descriptive. *Id.*

Defendants have attached copies of the manuals cited in the complaint where defendants have use "VCR 2" [FN6] primarily to indicate on diagrams where connections for a second VCR are to be made. The term is almost uniformly used in conjunction with designations of the first VCR in use as "VCR 1," a clear indication to buyers that it is used to designate a product part. The court finds defendants' use of the term to be a descriptive use that is protected by the "fair use" doctrine. Moreover, as defendants note, the complaint actually does not allege anything other than descriptive use. The complaint alleges that the trademark term is used in the manuals' "description" of the systems to "define" one of the system's modes or functions. Complaint, ¶ 44-46.

Plaintiff argues, however, that even descriptive use loses the protection of the "fair use" doctrine if the user acts in bad faith. Plaintiff contends that by only providing protection for descriptive use when the mark is "used fairly and in good faith," the Act provides no defense to an infringement action if defendant lacks good faith when using the mark. Thus, plaintiff argues that defendants cannot claim the defense if they used the mark knowing that other alternatives were available and with the intent of damaging plaintiff's good will. Plaintiff also contends that the issue of good faith is factual and must be reserved for the jury.

Plaintiff alleges in the complaint that defendants' use of "VCR 2" in their manuals was made in bad faith, that is, with improper intent. Response at 37. The complaint alleges that all named conspirators were aware of the "VCR- 2" trademark and of this litigation, and that the products containing the infringing use all appear in the United States at about the same time and subsequent to commencement of Go-Video I. Complaint, ¶ (d) and (e). These circumstances may suggest that defendants had an improper purpose for using "VCR 2" in their manuals, if that use offered any chance of buyer confusion as to the source of the product. That does not appear to be the case here, however.

*13 Courts generally determine whether a mark was used in "good faith" by evaluating the use

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Not Reported in F.Supp.
1992-2 Trade Cases P 69,973
**(Cite as: 1991 WL 425379 (D.Ariz.))**

itself, not the user's general state of mind. In *Schmid Laboratories v. Youngs Drug Products,* for example, the court looked to use of the mark, that is, whether the mark was used to promote identification with the trademark holder, to determine whether bad faith could be "inferred." *Schmid,* 482 F.Supp. 14, 21 (D.N.J.1979). See also *Abercrombie & Fitch Co. v. Hunting World, Inc.,* 537 F.2d 4, 13 (2nd Cir.1976) (holding "fair use" doctrine protected descriptive use of "safari" in part because defendant did, not use the word alone on the product "as it would doubtless have done if confusion had been intended.")

Authority directly interpreting "good faith" under the fair use statute is slim. Plaintiff quotes the Callmann treatise, which supports the argument that a defendant acting with improper intent would lose the statute's protection, even if the use itself were in a non-trademark sense. Response at 34 (citing 3A Callmann, *Unfair Competition, Trademarks and Monopolies,* ¶ 21.26 (L. Altman, 4th Ed.1983) ("if it is apparent that use of a free word is aimed at palming off or some other form of unfair competition, its continued use may be enjoined.") In addition, as plaintiff notes, the Ninth Circuit held in *Sierra On Line, Inc. v. Phoenix Software, Inc.* that use of a trademark when other choices were available may indicate an intent to trade on the trademark holder's name. *Sierra,* 739 F.2d 1414, 1423 (9th Cir.1984). Furthermore, the court in *Sierra* analyzed the good faith issue separately from the issue of whether it was used as a trademark and characterized the issue as a question of intent. *Id.* See also *Ringling Bros.-Barnum & Bailey Combined Show, Inc. v. Celozzi-Ettelson Chevrolet, Inc.,* 855 F.2d 480, 484 (7th Cir.1988) (analyzing question of intent separately from question of whether mark was merely descriptive); *Frito-Lay, Inc. v. Bachman Co.* [1986-2 TRADE CASES ¶ 67,384], 704 F.Supp. 432, 437 (S.D.N.Y.1989) (availability of terms to describe ruffled potato chips other than the trademark "Ruffles" held to raise question of fact as to defendant's good faith use).

These authorities do not preclude the court, however, from determining good faith by review of defendants' actual use of the term in order to infer the defendants' intent. Defendants' use of "VCR 2" in their manuals to indicate the point at which a second VCR is to be connected does not suggest

that the term identifies the product, and it creates virtually no possibility of confusion with plaintiff's product. The court can infer from the purely descriptive use defendants have made of the disputed term that defendants did not act in bad faith in using the term "VCR 2" as they did. See *Schmid Laboratories,* 482 F.Supp. at 21.

In sum, plaintiff alleges only a descriptive use of the term for which it claims trademark protection, and the court has determined from review of the term as actually used that defendants' use is non-trademark. See manuals attached to motion as Exhibits M and N. [FN7] In addition, although the question of good faith must be analyzed separately from the issue of whether the use was merely descriptive, the nature of the mark's use bears upon the question of whether it was used in good faith. In this case, defendants' use of the mark is purely descriptive and appears to offer virtually no chance of confusion as to product source. The court finds that no reasonable trier of fact could conclude that defendants intended their use of the mark to cause confusion as to the source of the product and therefore acted in bad faith. Defendants' use of the term "VCR 2" thus is protected by the "fair use" doctrine and the claim for trademark infringement will be dismissed.

II. *Sharp's Separate Motion to Dismiss Regarding Res Judicata*

**\*14** Sharp Corporation joined in the defendants' joint motion to dismiss but also has filed a separate motion on res judicata grounds. Sharp obtained summary judgment in Go-Video I based on Go-Video's failure to make sufficient demand on Sharp prior to commencing the suit. Sharp now contends that the claims dismissed in Go-Video I were exactly the same as the Go-Video II claims and thus are barred by the doctrine of res judicata.

Sharp presents basically the same res judicata arguments made by the joint defendants in the claim-splitting argument of their motion to dismiss. Sharp's motion differs from the other defendants in that its res judicata arguments rest upon a final judgment on the merits and not merely on the related but more general prohibition against claim-splitting. Sharp apparently believes that its invocation of the res judicata doctrine takes on additional force when applied to a final judgment

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Not Reported in F.Supp.
1992-2 Trade Cases P 69,973
**(Cite as: 1991 WL 425379 (D.Ariz.))**

Page 11

and not to a case in which the new claims were precluded from a prior, still-pending action by denial of a motion to amend. Sharp states, for example, that the res judicata doctrine applies "squarely" to its case, and that the judgment in its favor "is a final judgment on the merits which carries full res judicata effect." Motion at 6, n. 2. Sharp provides no authority, however, requiring the court to treat its res judicata argument differently from the joint defendants' claim-splitting argument, and the court concludes that the result under either theory should be the same.

Plaintiff argues that failure to make demand on Sharp as to the dual-deck VCR would not affect the Go-Video II allegations that were not made in Go-Video I: trademark infringement, patent pooling, price fixing, boycott/refusal to deal as to DAT and HDTV and sham pleading. Response at 6. That argument basically comes down to the same question at issue in the claim-splitting section of the joint motion to dismiss: whether the new claims in Go-Video II are part of the same cause of action as that of Go-Video I, so that dismissal of that cause (or denial of the motion to amend adding those claims) precludes the subsequent action. The court has decided, as stated in section I above concerning the joint motion to dismiss, that plaintiff is barred from bringing any claims for conduct occurring prior to April 20, 1988, on the grounds that those claims could have been included in Go-Video I and thus are barred by the rule against claim-splitting. The court also has held, however, that plaintiff may bring an action based on claims of antitrust conduct occurring after April 20, 1988.

Plaintiff argues that failure to make demand before commencing Go-Video I (June 22, 1987) is not relevant to a determination of whether sufficient demand was made before filing Go-Video II. The complaint in Go-Video II alleges that demand was made on each Japanese defendant "from and after the filing of the first Go-Video action." Response at 4, 6; Complaint ¶ 28. Plaintiff argues this demand constitutes a "change of facts essential to [the] judgment" that would prevent either collateral estoppel on the demand issue or res judicata as to any new claim against Sharp. Response at 6. The court agrees with plaintiff. Failure to make demand was the only basis for summary judgment in Go-Video I. Thus, if plaintiff can prove that it did make demand prior to filing Go-Video II, that

judgment will have no res judicata or collateral estoppel effect on the new action.

*15 Sharp also argues that the summary judgment obtained in Go-Video I is res judicata as to any conduct occurring before the entry of judgment on March 9, 1989. Reply at 4. The court has held, on the other hand, that the cut-off date for new claims is the date the second amended complaint was filed, April 20, 1988. See Section I(A) above. For the following reasons, the same date should determine the res judicata effect of Go-Video I on the claims against Sharp as the court has applied to the other defendants.

The cases Sharp cites that hold the controlling date for res judicata to be the date of judgment are inapposite, because they concern simultaneous actions brought on what were admittedly the same claims. See, e.g., *Guild Wineries and Distilleries v. Whitehall Co.,* 853 F.2d 755, 761 (9th Cir.1988) (where "[n]either the identity of the causes of action nor the fact that the parties [were] the same [was] disputed," judgment entered in an administrative adjudication was res judicata as to a pending federal diversity action, even though the diversity action was filed earlier); *Americana Fabrics, Inc. v. L & L Textiles, Inc.,* 754 F.2d 1524, 1529 (9th Cir.1985) ("When the same claim or issue is litigated in two courts, the second court to reach judgment should give res judicata effect to the judgment of the first, regardless of the order in which the two actions were filed."). This case does not concern the effect of a judgment on the same claims brought in different courts simultaneously. In this case, the court has found that acts occurring after the second amended complaint was filed in Go-Video I on April 20, 1988 form a new cause of action, because plaintiff could not have brought those claims in Go-Video I.

Plaintiff has alleged that it made demands on all alleged conspirators, including Sharp, sometime after Go-Video I was filed. The summary judgment in Sharp's favor entered on March 29, 1989 would not bar claims based on antitrust acts during the period between April 20, 1988 and March 29, 1989, if plaintiff had made the necessary demand prior to April 20, 1988. Such demand would constitute a change of essential facts that would undermine any res judicata effect of the judgment for that period just as it would for the

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Not Reported in F.Supp.
1992-2 Trade Cases P 69,973
(Cite as: 1991 WL 425379 (D.Ariz.))

Page 12

period following the entry of summary judgment.
Plaintiff therefore may include claims against Sharp
for any conduct occurring after the filing of the
second amended complaint in Go-Video I on April
20, 1988, and not just conduct occurring after the
entry of summary judgment on March 9, 1989.
[FN8]

III. *Sanyo's Motion to Strike and Dismiss*

Sanyo filed a separate motion to strike or dismiss
"the Sherman Act count," referring to the
conspiracy claims related to consumer electronic
products (CEPs), other than the dual-deck video.
Plaintiff responded to the motion, but Sanyo has
filed no reply.

A. *Motion to strike*

Sanyo moves under Rule 12(f) to strike the CEP
claims from plaintiff's complaint on the grounds that
they are redundant and sham. First, Sanyo argues
that the court should take judicial notice of the
evidence and arguments in Go-Video I to hold that
the dual-deck VCR claims of the Go-Video II
complaint are redundant under the Rule. Plaintiff
responds with brief versions of the arguments it
fully develops in response to the joint motion to
dismiss: (1) that claims for antitrust conduct
occurring after the first action was filed may be
brought in a new complaint; and (2) that plaintiff
may use evidence of the dual-deck conspiracy in
Go-Video II, even as to claims for which it cannot
recover in that action.

*16 The court will decide this part of Sanyo's
motion, however, on the basis of plaintiff's
alternative argument that "redundancy" under Rule
12(f) refers to repetitious statements within the
same complaint. Response at 3. References to
matters outside the pleadings have been stricken on
the basis of redundancy. *Blazer v. Black*, 196 F.2d
139, 143 (10th Cir.1952). The purpose of the rule,
however, is to prevent verbosity. See *Pittsburgh
National Bank v. Welton Becket Assoc.*, 601
F.Supp. 887, 890 (D.Pa.1985). Sanyo
misapprehends the meaning of "redundant" under
Rule 12(f).

Sanyo also argues that the consumer electronic
product (CEP) claims in Go-Video II are sham in
that Go-Video "never desired or planned" to deal in

any CEP products other than the dual-deck VCR.
Motion at 2-4. Sanyo presents no evidence to
support that statement and asserts merely that "[i]t
is clear beyond any doubt." *Id.* at 3-4. Sanyo
apparently is claiming that plaintiff lacks standing
as to CEPs. As plaintiff notes, however, Sanyo
does not claim that plaintiff has not adequately
plead its CEP claims and offers no argument in
support of its standing claim. This part of the
motion also will be denied. Sanyo participated in
the joint motion to dismiss as well, however, and
the court's ruling on that motion as it applies to
standing applies to Sanyo as well as to the other
defendants.

B. *Motion to dismiss*

Sanyo's motion to dismiss argues that the result
plaintiff complains of ("no DAT or HDTV
commerce anywhere for Go-Video or anyone else")
could only result from the three possible types of
agreements (denominated agreements A, B and C).
Sanyo apparently purports to be unable to tell which
type of agreement plaintiff is alleging. Motion at 4.
Sanyo contends that the court would have no
subject matter jurisdiction over a Type A
agreement, that Go-Video would have no standing
to sue as to a Type B agreement, and that plaintiff
has not alleged a Type C agreement, the only one as
to which it would have standing.

A. *Agreement not to manufacture or deal in such
products anywhere in the world*

Sanyo argues that a United States court would have
no jurisdiction over an agreement not to
manufacture or deal in CEPs anywhere in the world,
because an agreement that is worldwide in scope
would not satisfy the requirement under the *Alcoa*
case that it have both the purpose and effect of
interfering with U.S. commerce. Motion at 6
(citing *United States v. Aluminum Co. of America*
[1944-1945 TRADE CASES ¶ 57,342], 148 F.2d
416 (2nd Cir.1945)). Plaintiff contends, however,
that a worldwide conspiracy would be directed at
U.S. companies and that United States antitrust
statutes apply to worldwide cartels and to any
extra-territorial conduct that affects U.S. commerce.
Response at 6.

As plaintiff argues, the conspiracy alleged would
prevent an American company from competing in

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Not Reported in F.Supp.
1992-2 Trade Cases P 69,973
(Cite as: 1991 WL 425379 (D.Ariz.))

Page 13

the American CEP market. Thus, under *Alcoa,* the court would have subject matter jurisdiction over such a conspiracy. See also *Continental Ore Co. v. Union Carbide & Carbon Corp.* [1962 TRADE CASES ¶ 70,361], 370 U.S. 690, 704 (1962) ("A conspiracy to monopolize or restrain the domestic or foreign commerce of the United States is not outside the reach of the Sherman Act just because part of the conduct complained of occurs in foreign countries.").

B. *Agreement to refrain from manufacturing or selling products or parts in the United States market*

\*17 Sanyo contends that plaintiff would have "insurmountable standing problems" to sue for an agreement to refrain from manufacturing or selling CEP products or parts in the United States market, because it was not a competitor and can show no antitrust injury. Sanyo's argument that Go-Video was not a competitor is summed up in one sentence: "Go-Video has not shown itself to be a competitor of defendants, and it clearly was not." The court will not consider such a totally unsupported argument, although the court has previously addressed a similar argument in the standing portion of the defendants' joint motion to dismiss in which Sanyo participated.

Sanyo argues as well, however, that plaintiff could have suffered no antitrust injury as a result of any agreement by defendants not to export products or parts to the U.S., because such an agreement could only benefit Go-Video in the American market. That argument is supported by *Matsushita Electric Co. Ltd. v. Zenith Radio Corp.* [1986-1 TRADE CASES ¶ 67,004], 475 U.S. 574, 583 (1986). On that basis, Sanyo is correct that a Type B agreement would not have resulted in injury to plaintiff.

This conclusion does not necessarily support Sanyo's motion to dismiss, however, because Sanyo does not argue or attempt to show that this is the type of agreement plaintiff is alleging. Plaintiff did allege an agreement to limit output and production of CEP products, but Sanyo makes no mention of that agreement here. In fact, Sanyo's argument relates solely to defendants' alleged agreement to pool patents and technology and to exclude non-conspirators, including Go-Video, from access to them. Response at 5. Such an agreement should be classified under Type C (boycott targeted at

Go-Video), and thus plaintiff's argument does not apply to the Type B agreement.

C. *Agreement to refuse to deal with Go-Video*

Sanyo admits that Go-Video may have standing to sue for an agreement that it characterizes as "*a true targeted boycott of Go-Video* " (emphasis in original). Sanyo does not define a "targeted boycott," nor does it discuss any specific defects in plaintiff's pleadings. Sanyo merely states summarily that plaintiff has not alleged such an agreement. Motion at 8.

Plaintiff responded by stating only that, "after the filing of *Go-Video I,* defendants can hardly claim ignorance of Go-Video, or that their refusals to deal with Go-Video lacked the intent to block Go-Video specifically from entering into competition with them." Response at 6. Plaintiff fails to identify where in the complaint it has alleged a targeted boycott of Go-Video and makes no attempt to argue that its allegations of conspiracies to exclude competitors "including Go-Video" would be a targeted boycott under Sanyo's analysis.

Despite plaintiff's failure to address Sanyo's argument that it has not plead a targeted boycott, Sanyo's unsupported assertion that plaintiff has failed to allege the only agreement for which it would have standing cannot support dismissal of plaintiff's claims. Sanyo's motion fails to demonstrate either that the court has no subject matter jurisdiction over plaintiff's conspiracy allegations or that plaintiff lacks standing to bring such a suit and thus should be dismissed under Fed.R.Civ.P. 12(b). That is not to say that plaintiff has established standing in its response, merely that Sanyo has failed to show that it does not exist. Sanyo's separate motion to dismiss will therefore be denied. [FN9]

IV. *Defendants' Joint Motion to Strike*

\*18 Defendants moved to strike from the complaint allegations that defendants' "meetings, agreements and conspiracies" are "part and in furtherance of industrial policy and organization in Japan extending over at least the past century." Motion at 1-2. The complaint alleges the effects that alleged policy and organization have had on the goals and management of Japanese industry.

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Not Reported in F.Supp.
1992-2 Trade Cases P 69,973
(Cite as: 1991 WL 425379 (D.Ariz.))

Defendants contend that the allegations concerning Japan's industrial policy and organization, and their historical background: (1) are impertinent and immaterial, and (2) would prejudice the defendants and "inject ethnocentric behavior" into the lawsuit. Defendants also note that the court has refused in Go-Video I to consider evidence related to the history of Japanese industry or to Japanese customs and business practices in other industries in deciding motions for summary judgment. In its order of July 25, 1990, the court held that such evidence "goes beyond the bounds of the type of evidence contemplated by the Supreme Court in *American Tobacco* and *Continental Ore....*" Defendants charge plaintiff with having made the allegations in question to avoid this kind of evidentiary ruling in Go-Video II.

Plaintiff argues that defendants mischaracterize both the materiality of the allegations and plaintiff's intentions in including them. In a supplement to its response, plaintiff also claims that defendants admitted the relevance of Japanese history and culture to industrial management customs by designating an expert witness who has stressed the importance of that relationship in his writings.

Plaintiff relies on two Supreme Court cases, *American Tobacco* and *Continental Ore,* and numerous lower court decisions that allowed the use of evidence concerning the pertinent industry and concerning events prior to the time period in issue. Response at 4-5. These cases, however, concern the practices and history of the particular industry in which antitrust conduct was at issue or evidence of conduct closely related to a particular antitrust scheme, rather than ethnic or national customs or management customs in other industries. In *American Tobacco,* for example, the court held that "an appreciation of the history and development of the cigarette industry [is] essential to an understanding of the case." *American Tobacco Co. v. United States,* 328 U.S. 781, 790 (1946). See also *Continental Ore Co. v. Union Carbide & Carbon Corp.,* 370 U.S. 690, 709-10 (1962) (error to exclude evidence of anticompetitive scheme already in existence at time defendant entered the industry); *United States v. Continental Group, Inc.,* 456 F.Supp. 704, 719 (E.D.Pa.1978) (in antitrust cases in particular, evidence of events or conduct preceding the alleged conspiracy is admissible to demonstrate that "a given conspiracy is a continuing one or to explain the acts and declarations of the conspirators once the conspiracy commences").

Plaintiff appears to recognize the line between evidence concerning the particular industry involved and the particular conspiratorial scheme, and evidence concerning the more general background that might account for the industry's management customs. Plaintiff correctly states first that it should "[c]ertainly be permitted to show that these defendants are participants in an industry that has long been organized and operated on a collective basis." Response at 5. The evidence plaintiff describes would be relevant to establishing the context within which the alleged conspiracy developed and thus should be admissible under *American Tobacco* and similar holdings.

*19 Plaintiff goes on, however, to argue that "Go-Video is entitled to show the origins and causes of such a system of collective enterprise." Response at 5. At this point plaintiff goes beyond the kind of evidence the authorities would support. Plaintiff is incorrect when it declares that evidence of the "deep and broadly based historical roots extending into government and other industries" that underlies the industrial organization is the kind of evidence the court in *American Tobacco* termed "essential." Response at 5-6. Plaintiff also quotes *Continental Group* in support of its argument that the kind of evidence plaintiff seeks to admit may be used to show "the intent, purpose or aim of the parties to the offense." Response at 5. The evidence at issue in *Continental Group,* however, was testimony concerning certain events that preceded the time of the alleged conspiracy but were directly related to it. *Continental Group,* 456 F.Supp. at 719. Thus, this case also would not support plaintiff's contention.

In sum, the authorities plaintiff cites would support allowing the allegations as to the role of the "industry policy and organization" of the Japanese consumer electronics industry in fostering the alleged "meetings, agreements and conspiracies," and evidence preceding the time of the alleged conspiracy that is directly related to it. They would not, however, support similar allegations as to "the history of Japanese industry as a whole, other Japanese industries or general Japanese business practices and customs," the same evidence the court excluded from consideration in Go-Video I. See

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Not Reported in F.Supp.
1992-2 Trade Cases P 69,973
(Cite as: 1991 WL 425379 (D.Ariz.))

Page 15

Order in Go-Video I dated July 25, 1990, at 27.

Plaintiff also argues that defendants have themselves admitted that knowing the "history of the Japanese industrial organization" is necessary to understanding the modern consumer electronics industry. Response at 7-9. Plaintiff cites deposition testimony and an EIAJ publication, neither of which actually offer much support for its argument. In the cited deposition, for example, the deponent was not asked about the importance of understanding Japanese history for purposes of understanding practices in the consumer electronics industry but rather its importance for understanding "the modern economic structure and practices of Japan since 1945." Id. The particular quotations from writings of the founders of Matsushita and Sony are considerably more relevant, but, assuming these statements relate to the consumer electronics industry, they would be admissible even if the allegations as to general Japanese business history and organization are stricken. Id. at 9.

Plaintiff also filed a supplement to its response containing an excerpt from the vita of one of defendants' designated experts. The excerpt contains a description of the expert's doctoral thesis, which appears to espouse basically the theory plaintiff puts forth in the disputed allegations: that the various Japanese industries work in cooperative units that can only be understood with reference to the "sociological framework in which they are embedded." Supp. Response at 3. The thesis apperas to conclude that formation of these industrial groupings has led to a great difference between how Japanese and Western companies operate "that are reflected in Japanese firms' internal management and external strategies and in the overall structure of the Japanese markets." Id.

*20 As defendants argue, their designation of a witness who espouses any particular theory does not amount to an admission that the theory is correct or is relevant to the issues in this case. In addition, although the quoted material appears to support plaintiff's theory that Japanese history and its general business philosophies and policies are in some way relevant to plaintiff's conspiracy case, the court will not allow plaintiff to engage in the massive discovery that would be necessary to support a theory that is only tangentially relevant to the primary issue in this case: whether defendants

engaged in a conspiracy in violation of the Sherman Act that resulted in antitrust injury to this plaintiff. Plaintiff's representation that it would seek only evidence directly related to the CEP industry and the specific practices alleged does not allay those concerns.

Thus, the court will strike as irrelevant allegations concerning the history of Japanese industry as a whole, other Japanese industries or general Japanese business practices and customs. Restricting the scope of plaintiff's allegations in this manner also will streamline resolution of this case, which is one function of the rule granting courts the power to strike pleadings or portions of pleadings. 5A, C. Wright & A. Miller, Federal Practice and Procedure § 1382 (2d ed. 1990). Such a limitation of the allegations and the proof relevant to those allegations also will avoid the possibility of any prejudice to the defendants arising from an emphasis on the differences between Japanese and American cultures and their respective business practices and customs.

V. Motion for Order for Preservation of Evidence and Non-Destruction of Documents

Also pending before the court is plaintiff's motion for an order for preservation of evidence and non-destruction of documents. That matter was stayed pending entry of this order on the motions to dismiss. This decision does not entirely dispose of the motions, however, because the court has converted the motion to dismiss on the basis of standing, as it relates to antitrust conduct after the filing of Go-Video I, to a motion for summary judgment. Thus, the court will continue to stay proceedings on the motion concerning preservation of evidence until the motion for summary judgment has been decided.

It Is Ordered granting defendants' joint motion to dismiss the complaint [FN10] (Doc. No. 319) as to all claims based upon conduct occurring prior to April 20, 1988, the date of filing of the second amended complaint in Go- Video I, including claims related to the dual-deck VCR, other consumer electronic products (CEPs), and the sham pleading claim alleged in paragraph 27(h) of the complaint.

It Is Further Ordered, pursuant to Fed.R.Civ.P.

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Not Reported in F.Supp.
1992-2 Trade Cases P 69,973
**(Cite as: 1991 WL 425379 (D.Ariz.))**

12(b), that defendants' joint motion to dismiss regarding standing to bring claims relating to consumer electronic products other than the dual-deck VCR (CEPs) shall be converted to a motion for summary judgment. Because the court has granted defendants' motion to dismiss on the claim-splitting issue, the motion concerning standing will pertain only to claims relating to conduct occurring after April 20, 1988. This order shall constitute notice of such conversion, and discovery and further briefing on the motion shall be conducted as follows:

*21 1. The parties shall have 30 days from date this order is entered within which to take additional discovery on the standing issue only.

2. Defendants may file a supplemental motion within 30 days of the close of discovery. A response and reply may be filed in accordance with local Rule 11(1).

3. The supplemental pleadings shall be filed in accordance with Fed.R.Civ.P. 56 and Local Rule 11(1).

It Is Further Ordered granting defendants' motion to dismiss claims concerning price fixing and limitations on the output and production of consumer electronic products, alleged in paragraphs 27(e) and (f) of the complaint, but denying defendants' motion as it pertains to the claim of patent pooling, alleged in paragraph 27(d)(1) of the complaint.

It Is Further Ordered granting on the merits defendants' motion to dismiss the sham pleading claim, alleged in paragraph 27(h) of the complaint.

It Is Further Ordered granting defendants' motion to dismiss the trademark infringement claim, alleged in paragraphs 30-49 of the complaint.

It Is Further Ordered granting defendant Sharp's separate motion to dismiss (Doc. No. 308) as to claims based on conduct occurring prior to April 20, 1988, the date of filing of the second amended complaint in Go-Video I, but denying the motion as it pertains to conduct occurring after that date.

It Is Further Ordered denying Sanyo's separate motion to strike and/or dismiss plaintiff's claims relating to consumer electronic products other than the dual-deck VCR (Doc. No. 330).

It Is Further Ordered denying defendants' joint motion to strike allegations contained in paragraph 27(1) of the complaint (Doc. No. 328) to the extent those allegations pertain to the policies and organization of the consumer electronics industry in Japan, but granting the motion as it pertains to the history of Japanese industry as a whole, other Japanese industries or general Japanese business practices and customs.

It Is Further Ordered staying plaintiff's motion for an order for preservation of evidence and non-destruction of documents (Doc. No. 5-1) until the court has ruled on the converted motion for summary judgment concerning Go-Video's standing to bring this action as to conduct occurring after the filing of Go-Video I.

It Is Further Ordered directing the clerk of the court to file this memorandum and order under seal until further order of the court.

It Is Further Ordered setting a telephonic hearing with all counsel for 9:00 a.m., January 7, 1991, for the purpose of considering the immediate lifting of the order sealing this memorandum and order.

It Is Further Ordered directing the clerk of the court to make a copy of the memorandum and order available immediately upon filing to a representative of Victoria Lewis, coordinating counsel for defendants, pursuant to the stipulation signed by counsel for Go-Video and defendants' coordinating counsel and filed May 12, 1989.

> FN1. Plaintiff filed a first amended complaint shortly before oral argument on the motions to dismiss and/or strike that are the subject of this order. The only change made by the amended complaint was the addition of a claim that defendants had threatened Go-Video with filing an allegedly baseless claim of patent infringement. The parties and the court therefore agreed to proceed on the motions to dismiss and/or to strike without regard to the filing of the amended complaint. The court thus has treated the motions as applied to the first amended complaint, and all references to the complaint in this order refer to the first amended complaint.

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Not Reported in F.Supp.
1992-2 Trade Cases P 69,973
(Cite as: 1991 WL 425379 (D.Ariz.))

FN2. The court sustains plaintiff's objection to the September 28, 1990 letter to the court from defendants' counsel concerning issues raised in the oral argument. The court has not considered the letter in making its determinations.

FN3. The parties do not directly address the issue of the applicable cut-off date for determining which antitrust acts may or must be brought in a subsequent action. Defendants apparently assume the applicable date to be June 22, 1987, the date the first amended complaint was filed in Go- Video I. Plaintiff at times refers simply to the filing of Go-Video I but at other times specifically assumes that all acts occurring before the second amended complaint was filed on April 20, 1988 could have been brought in Go-Video I. The court has determined the proper cut-off date to be April 20, 1988, the date the second amended complaint was filed, because plaintiff could have included in Go-Video I any antitrust act related to the alleged conspiracy that occurred prior to that date. See *Cornwell Quality Tools Co. v. C.T.S. Co.* [1971 TRADE CASES ¶ 73,620], 446 F.2d 825, 832 (9th Cir.1979) (defendant could not present evidence related to events occurring after it had filed its counterclaim in order to recover for injuries casused by those acts, but the proper cut-off date was the filing of the final counterclaim in response to plaintiff's amended complaint, not the date of the first counterclaim filed).

FN4. The plaintiff also must prove future damages resulting from that refusal with sufficient certainty to recover in that action. *Zenith Radio Corp.,* 401 U.S. at 339, 91 S.Ct. at 806, 18 L.Ed.2d at ---. If the court holds future damages flowing from a final refusal to deal to be too speculative for recovery in that action, plaintiff may file a subsequent action to recover future damages. *Id.*

FN5. Although the complaint alleges a conspiracy as to all consumer electronic products, plaintiff appears to allege it was injured primarily by being prevented from entering the market for video cassette recorders, both single and dual-deck, digital audio tape recording equipment (DAT products) and high definition television (HDTV). See Complaint, ¶ 27(g)- (j), 28 & 29.

FN6. Unlike plaintiff's trademark, the term as defendants have used it is not hyphenated.

FN7. As defendants point out, the court may take judicial notice of the manuals for purposes of deciding the motion to dismiss, because they were referred to specifically in the complaint. 5A C. Wright & A. Miller, *Federal Practice & Procedure,* § 1327, at 762-63.

FN8. Although the point is moot given the court's determination that the res judicata effects of the summary judgment is controlled by the date the second amended complaint was filed and not the date summary judgment for Sharp was entered, the court also finds no basis for defendants' argument that the date of judgment for purposes of determining the res judicata effect should be as of entry of the order denying the motion to reconsider (July 27, 1990), rather than the date summary judgment was originally granted (March 9, 1989).

FN9. Sanyo participated in defendants' joint motion to dismiss, however, and thus the court's ruling on that motion will apply to Sanyo as well, notwithstanding denial of this separate motion.

FN10. As noted above, this order applies to the first amended complaint, which was filed on September 21, 1990. See *supra*

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Not Reported in F.Supp.
1992-2 Trade Cases P 69,973
**(Cite as: 1991 WL 425379 (D.Ariz.))**

Page 18

     note 1. All references to the complaint in this order refer to the first amended complaint.

1991 WL 425379 (D.Ariz.), 1992-2 Trade Cases P 69,973

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works



# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

FILED

JAN 6   12 01 PH '04

U.S. DISTRICT COURT
NEW HAVEN, CONN.

EVELINE GOINS,                          :

          Plaintiff,            :

v.                                      :   Civil No.  3:02cv1069 (MRK)

                                        :

JBC & ASSOCIATES, P.C.,                 :
JACK H. BOYAJIAN,                       :
MARVIN BRANDON,                         :

                                        :

          Defendants.           :

## ENDORSEMENT AND SCHEDULING ORDER

The Court having conferred with the parties on January 5, 2004 in the above-captioned matter, the following is hereby ordered:

1)      The defendants' Motions to Compel Deposition and Document Production from Plaintiff [doc. ## 29 and 38] are DENIED.  Insofar as the Motions seek production of documents, the Motions are moot in view of the fact that plaintiff attached to her Local Rule 56(a) Statement [doc. #34] filed in conjunction with her Motion for Partial Summary Judgment [doc. #32] the only written communication between plaintiff and defendants pertinent to this lawsuit, and plaintiff, through her counsel, represented to the Court and defendants' counsel at the January 5 conference, that plaintiff does not intend at trial to rely on any other written communications between the parties.   Insofar as the Motions seek to compel plaintiff to appear for a deposition, the Motions are denied on the ground that there is not good grounds for taking the deposition in view of the fact that plaintiff, through her counsel, represented to the Court and defendants' counsel at the

the January 5 conference that plaintiff has no actual damages and seeks only

statutory and punitive damages, as well as attorney's fees and equitable relief;

2)   The Motion to Modify Scheduling Order [doc. #31] is GRANTED insofar as the

parties shall have until **January 30, 2004** to complete the following discovery:

defendants will be permitted to file a single interrogatory seeking the factual basis

for plaintiff's claim for punitive damages; and plaintiff shall take the deposition of

Mr. Boyajian.  In all other respects, the Motion is DENIED;

3)   Defendants' Motion to Enlarge Time [doc. #40] in which to file its opposition to

Plaintiff's Motion for Summary Judgment [doc. #32] is GRANTED.  Defendants

shall file their opposition no later than **February 17, 2004,** and the plaintiff shall

file a reply in accordance with the deadlines provided by the Local Rules.


IT IS SO ORDERED

_____

Mark R. Kravitz, U.S.D.J.


Dated at New Haven, Connecticut: <u>January 6, 2004</u>.