UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

FILED

EVELINE GOINS      :    CIVIL ACTION NO. 2004 SEP 20 A 11: 36
          :    3:02 CV 01537 (AVC)
          :      DISTRICT COURT
          :       FORD, CT.
vs.          :
          :
          :
MARVIN BRANDON      :    SEPTEMBER 10, 2004

## DECLARATION OF JACK H. BOYAJIAN

I, Jack H. Boyajian, do hereby state:

1.  I am over the age of eighteen and make the enclosed declaration based upon my familiarity with the records and operations of JBC & Associates P.C. ("JBC"), a professional corporation engaged in the practice of law. I make this declaration in opposition to the plaintiff's motion for summary judgment. The procedures described herein existed s of the time that the plaintiff was sent the letter at issue in this case.

2.  I am a shareholder of a New Jersey law firm, JBC & Associates, Inc. and am responsible for the management of the firm and was so employed at the time that JBC engaged in collection activity with respect to plaintiff Goins.

3.  Defendant Marv Brandon, is an attorney who is a salaried employee of the firm.

4.  On or about November 22, 2001 a letter was sent from JBC & Associates, P.C. over Mr. Brandon's name to Eveline Goins ("Ms. Goins") concerning

certain checks that she had issued that were dishonored for insufficient funds. The letter is sent based upon the debtor's non-response and the pre-determined criteria used in the office.  Mr. Brandon's name is associated with the letter as a representative of JBC and a potential point of contact for consumers or their counsel.

5.    In another action commenced in June, 2002 by Ms. Goins in this District Court, entitled Goins v. JBC & Associates, P.C., Civil Action No. 3:02 CV 1069 (CFD), and in which Marv Brandon is a defendant, Ms. Goins has made claims concerning a letter nearly identical to the letter at issue in this case.  A copy of her Complaint is annexed hereto as Exhibit A, and a copy of the letter at issue in the first case is appended as Exhibit B.

6.    The information supporting the claims in this action was available to the plaintiffs prior to the time she commenced the first action.  Nonetheless, the plaintiff's counsel separated the virtually identical matters in order to assert two separate cases based upon similar complaints about virtually identical letters.

7.    The instant motion claims that Brandon violated the FDCPA by misrepresenting the involvement of counsel in the collection of the account, citing cases concerning whether law firms were meaningfully involved in the collection process when they sent correspondence to consumers.

8.    Mr. Brandon is one of several attorneys on the staff of JBC & Associates, P.C.  In such capacity, he interacts with debtors or their counsel from time

to time in connection with collection accounts.

9.    JBC & Associates, P.C. provides professional services to its clients
concerning the files that are placed with it.  When an account concerning a
bad check is received from a client, typically electronic information is
input into JBC's computer system into an excel spreadsheet containing
relevant information regarding the transaction at issue (e.g., check number
and amount, drawers bank, check date, demographic and geographic
information). The review process sometimes entails examinations of
copies of checks at issue in a particular collection. Software is applied to
the data for a variety of purposes.

10.   Attorneys in the office, including myself, review incoming files to
determine the completeness of the information, to identify the relevant
jurisdiction, and to examine possible limitation periods and the
applicability of specific state statutes governing bounced checks.  If the
reviewing attorney determines that the account is appropriate for
collection, it is accepted and the relevant information is downloaded into
JBC's CK software collection systems.  Other accounts that are rejected
are returned to the clients.

11.   The firm then puts the files through what is known as a "scrub" process
used to obtain and/or verify current address and phone information.
Accounts are updated depending upon the results.

12.   A first notice is mailed to debtor.  The type of first letter is determined by
an attorney and is dictated, among other things, by the account type, the

state of the debtor and the place where the relevant transaction occurred. There is another scrub of the file against a National Change of Address database to aid in identifying incorrect addresses. Letters for Files with addresses known to be invalid or incorrect are not mailed. If mail is returned, no additional mail will be sent until new address information is obtained from a reasonably reliable source.

13.    Daily incoming mail is sorted by staff into categories such as returned mail, payments , disputes and general correspondence. In response to such mail, accounts will be notated to indicated disputes, claims of fraud or bankruptcy if the accounts have not been already so classified. In response to certain situations, under attorney supervision, files may be closed and returned to the client.

14.    JBC responds to disputes and sends verification of the indebtedness to debtors. Correspondence requiring attorney involvement is directed to one or more of the attorneys in the office, including Marv Brandon, who communicates with debtors and their counsel, responds to disputes and negotiates on account files assigned to him.

15.    JBC attorneys make recommendations as to whether suit is warranted in particular cases, and JBC is authorized by clients to return local counsel on their behalf in order to initiate suit. Other actions are pursued in which JBC acts as counsel of record for creditor. In the case of Goins a decision had not yet been made whether litigation would be pursued, although it remained possible.

16. JBC attorneys, including Mr. Brandon, manage litigation in other jurisdictions on assigned accounts. Brandon served as counsel of record in certain collection actions in New York and New Jersey where he is admitted to practice. JBC attorneys including Brandon, respond to inquiries regarding settlement and/or strategy from time to time.

17. Moneys collected by JBC for their clients are deposited in the firm's attorney trust account from which disbursements are made to clients. JBC receives, processes and accounts for payments made by consumers for its clients.

18. JBC attorneys are involved at various points in the collections process in file intake and screening, the handling of disputes and legal issues as they may occur, communications and negotiations with consumers or their counsel and the selection and management or supervision of local counsel on behalf of clients. Many of such functions require the exercise of professional judgment and the performance of professional services.

19. The letter in question in this case, to the extent that it represents that an attorney is involved in the collection, is true. The fact that certain procedures in the office are automated, or performed by staff under the ultimate supervision of an attorney other than Brandon does not contradict the fact of JBC's and Brandon's genuine involvement of the collection activities of the firm on matters assigned to him or where consumers or counsel communicate with him.

This is to certify that, under penalty of perjury, I hereby state that I have read the foregoing declaration, the contents of which I believe to be true and correct to the best of my knowledge and belief.

Dated:

Jack H. Boyajian

**CERTIFICATION**

This is to certify that a copy of the foregoing has been mailed, postage prepaid, this 15th day of September 2004, to:

> Joanne S. Faulkner, Esq.
> 123 Avon Street
> New Haven, CT 06511

Jonathan D. Elliot