UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

EVELINE GOINS

v.  CASE NO. 3:02CV 1069 (WIG)

JBC & ASSOCIATES, P.C.
JACK H. BOYAJIAN                    September 8, 2005
MARVIN BRANDON

### PLAINTIFF'S FEE APPLICATION

Plaintiff applies for an award of fees against defendants in the sum of $19,271.

Plaintiff prevailed on her motion for partial summary judgment, and defendants agreed to

pay $1,500 to plaintiff, more than the maximum statutory damages. Plaintiff also requests

$156 in expenses, including filing and parking costs. Counsel submits a memorandum and

an affidavit as to time and experience herewith.

THE PLAINTIFF


BY____/s/ Joanne S. Faulkner_____
JOANNE S. FAULKNER ct04137
123 Avon Street
New Haven, CT 06511-2422
(203) 772-0395

Certificate of Service

I hereby certify that on July 19, 2005, a copy of the foregoing was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

____/s/ Joanne S. Faulkner___
JOANNE S. FAULKNER ct04137

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

EVELINE GOINS

v.                                          CASE NO. 3:02CV 1069 (WIG)

JBC & ASSOCIATES, P.C.
JACK H. BOYAJIAN                            September 8, 2005
MARVIN BRANDON

PLAINTIFF'S MEMORANDUM RE ATTORNEYS FEES

Plaintiff applies for an award of fees, based on the summary judgment entered herein, Goins v. JBC & Assoc., P.C., 2004 WL 2713235, 2004 U.S. Dist. LEXIS 23811 (D. Conn. Nov. 24, 2004), and defendants' ensuing agreement to pay more than the maximum amount of statutory damages available in this case.

The Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. §1692k(a)(3), provides that a defendant who fails to comply with any of its provisions "is liable" to the plaintiff for a "reasonable attorney's fee as determined by the court." Plaintiff applies for a fee award of $19,271 at $350 per hour for less than 56 hours, modest in this hard fought case.

In awarding fees, the Court can consider the substantial effort of plaintiff's attorney caused by defendants' "counsel who fought the case bitterly to the very end and even now continue their recalcitrant posture." Birmingham v. Sogen-Swiss Intern. Corp. Retirement Plan, 718 F.2d 515, 523 (2d Cir. 1983).

> Although private parties looking only to their own interests would not invest more in litigation than the stakes of the case, the combination of self-interest with the American Rule on the allocation of legal costs means that people can get away with small offenses. A two-day suspension may be unconstitutional, but a few hours of legal time costs more than the wages lost. Section 1988 helps to discourage petty tyranny. Awarding the full cost of litigation, which looks excessive in the single

> case, is sensible because it aids in the enforcement of rules of law. [citation omitted]. Put another way: Monetary awards understate the real stakes. Judicial decisions have effects on strangers. This litigation was prosecuted by a lawyer retained by a union of public employees and stoutly resisted by the county. If as the defendants say "only" $3,700 was at stake, why the tenacious resistance? Defendants do not contend that the exertion on plaintiff's side was unreasonable in relation to the defense; no more is necessary to show that the judge acted within his discretion in awarding fees exceeding the monetary recovery.

Barrow v. Falck, 977 F.2d 1100, 1103-04 (7th Cir. 1992).

"While [defendant] is entitled to contest vigorously [plaintiff's] claim, once it does so it cannot then complain that the fees award should be less than claimed because the case could have been tried with less resources and with fewer hours expended." Henson v. Columbus Bank & Trust Co., 770 F.2d 1566, 1575 (11th Cir. 1985). To the same effect: Copeland v. Marshall, 641 F.2d 880, 904 (D.C. Cir. 1980) (en banc) (Title VII; contentious litigation strategy forced plaintiff to respond in kind); Loggins v. Delo, 999 F.2d 364, 368 (8th Cir. 1993) ($25,000.00 attorney's fee award for recovery of $102.50 in actual damages).

FDCPA Fee Standards

Where, as here, an attorneys fee provision is phrased in mandatory terms, "fees may be denied a successful plaintiff only in the most unusual of circumstances." De Jesus v. Banco Popular de Puerto Rico, 918 F.2d 232, 234 (1st Cir. 1990) (truth in lending). An award of fees is also mandatory in FDCPA cases. Zagorski v. Midwest Billing Services, Inc., 128 F.3d 1164 (7th Cir. 1997); Tolentino v. Friedman, 46 F.3d 645, 651 (7th Cir. 1995) (George C. Pratt, C.J.); Graziano v. Harrison, 950 F.2d 107, 113-14 (3d Cir. 1991) (FDCPA "mandates an award of attorney's fees as a means of fulfilling Congress's intent that the Act should be enforced by debtors acting as private attorneys general"). Fees are

mandatory even if there has been no award of actual or statutory damages. Emanuel v. American Credit Exchange, 870 F.2d 805, 809 (2d Cir. 1989); Pipiles v. Credit Bureau of Lockport, 886 F.2d 22, 28 (2d Cir. 1989).

> Civil suits will deter abusive practices only if it is economically feasible for consumers to bring them. Unless consumers can recover attorneys fees it may not be possible for them to pursue small claims .... [U]nscrupulous collection agencies have little to fear from such suits if consumers must pay thousands of dollars in attorney fees to protect hundreds. Congress recognized this problem and specifically provided for the award of attorney fees to successful plaintiffs.

Venes v. Professional Service Bureau, Inc., 353 N.W.2d 671 (Minn. App. 1984).

The $350 Hourly Rate is Reasonable

Counsel seeks fees at $350 per hour. Please see affidavit submitted herewith. That award is now below current hourly market rates in Connecticut., and was recently awarded to plaintiff in Petrolito v. Arrow Financial Services, 3:02cv484 (JCH) (Doc. No. 148) (D. Conn. July 28, 2005). "Paying counsel in FDCPA cases at rates lower than those they can obtain in the marketplace is inconsistent with the congressional desire to enforce the FDCPA through private actions, and therefore misapplies the law." Zagorski, supra, citing Tolentino, 46 F.3d at 653.

In Cashman v. Ricigliano, Civil No. 3:02CV1423 (MRK) (WIG), the court awarded over $30,000 in fees (and over $2,200 in costs) in a one-issue FDCPA case. In Gradisher v. Check Enforcement Unit, 2003 U.S.Dist. LEXIS 753 (W.D. Mich. 2003), the court awarded attorney fees of $69,872.00 where the plaintiff recovered FDCPA statutory damages of only $1,000.00. In Armstrong v. Rose Law Firm, P.A., 2002 WL 31050583 (D. Minn. Sep 05,

2002) the court awarded the full lodestar fee request of over $43,000 at $250 per hour when the consumer received the maximum FDCPA statutory damages of $1,000.

In Perez v. Perkiss, 742 F. Supp. 883 (D. Del. 1990), an FDCPA case, the court awarded over $10,000 in fees on a $1200 jury verdict, including 11 hours defending the fee petition. "[N]o matter how high the settlement offers urged by the *plaintiff* may have been, those offers were still for significantly less money than the total sum the plaintiff, as the prevailing party, is now entitled to recover." Id. at 890. See also Norton v. Wilshire Credit Corp., 36 F. Supp. 2d 216 (D.N.J. 1999) (awarding over $57,000 in fees in an FDCPA case).

In Freer v. State Credit Adj. Bureau, Inc., Civil No. 3:97CV 1239 (GLG) (Doc. No. 71) (D. Conn. Aug. 4, 2000), the court awarded $10,000 in fees on a $500 jury verdict. In Freer, fees were awarded on a quarter hour basis; $275 per hour was found reasonable; proportionality was rejected based on LeBlanc-Sternberg v. Fletcher, 143 F.3d 748 (2d Cir. 1998); the time was generally not bifurcated between successful and unsuccessful claims. Some legitimate hours that the court deemed excessive were reduced. In Pabon v. Recko, Civil No. 3:OOCV380 (DJS) (TPS), the court awarded $23,445 for 78.15 hours at $300 per hour, likewise reducing excessive hours. Doc. No. 171.[1]

---

[1] "When a lawyer travels for one client he incurs an opportunity cost that is equal to the fee he would have charged that or another client if he had not been traveling. That is why lawyers invariably charge their clients for travel time, and usually at the same rate they charge for other time ***. And if they charge their paying clients for travel time they are entitled to charge the defendants for that time in a case such as this where the plaintiffs have shown a statutory right to reasonable attorneys' fees. *** The presumption, which the defendants have not attempted to rebut, should be that a reasonable attorney's fee includes reasonable travel time billed at the same hourly rate as the lawyer's normal working time."
Henry v. Webermeier, 738 F.2d 188, 194 (7th Cir. 1984). See also In re Maurice, 69 F.3d 830, 834

Lodestar Figure

Currently prevailing marketplace rates establish the lodestar amount. Missouri v. Jenkins by Agyei, 491 U.S. 274, 283 (1989); Blum v. Stenson, 465 U.S. 886, 895 (1983); DiFilippo v. Morizio, 759 F.2d 231, 235 (2d Cir. 1985) (rejecting 46 hours on pretrial memo and 42 hours on fee application); Cohen v. West Haven Bd. of Police Com'rs, 638 F.2d 496, 506 (2d Cir. 1980).

There is a strong presumption that the lodestar figure (reasonable hours times reasonable rate) represents a reasonable fee. Blanchard v. Bergeron, 103 L.Ed. 2d 67, 76 (1989), quoting Pennsylvania v. Delaware Valley Citizens' Council for Clean Air, 478 U.S. 546, 656 (1986).

"The district court may not reduce the established market rate by some factor that it believes accounts for differences between large firms and small firms. Lawyers of common expertise and experience in the same market are entitled to the same rate." Bankston v. State of Illinois, 60 F.3d 1249, 1255-56 (7th Cir. 1995); Bailey v. District of Columbia, 839 F. Supp. 888, 891 (D.D.C. 1993) (no distinction between solo and large firm rate).

While the Court has discretion to determine the proper fee amount, "[T]he latitude of its discretion is narrowed by a presumption that successful civil rights litigants should recover reasonable attorney's fees unless special circumstances render such an award unjust. . . . Furthermore, where, as here, the party achieves success on the merits, an

---

(7th Cir. 1995) ("attorneys customarily charge their clients for time on an opportunity-cost basis. Statutes authorizing compensation for attorneys' fees therefore permit compensation for travel time."); Crumbaker v. Merit Systems Protection Board, 781 F.2d 191, 193-94 (Fed. Cir. 1986) (reasonable travel time should be compensated at the same rate as other working time).

award of all reasonable hours at a reasonable hourly rate, i.e., the lodestar figure, is presumptively appropriate." DiFilippo, 759 F.2d at 234.

"[A] party advocating the reduction of the lodestar amount bears the burden of establishing that a reduction is justified." United States Football League v. National Football League, 887 F.2d 408, 413 (2d Cir. 1989), cert. denied, 493 U.S. 1071 (1990) (awarding $5,500,000 in fees on $3 recovery), cited in Grant v. Martinez, 973 F.2d 96, 101 (2d Cir. 1992). See Laura B. Bartell, Taxation of Costs and Awards of Expenses in Federal Court, 101 F.R.D. 553, 560-62 (1984).

Plaintiff submits that fee standards in civil rights cases are applicable here, because an important public policy was vindicated. *See* Delaware Valley, 478 U.S. at 559-60; Zagorski, supra; Tolentino, 46 F.3d at 652; Hollis v. Roberts, 984 F.2d 1159, 1161 (11th Cir. 1983) (FDCPA award $1,500; fees granted for 24.9 hours at $150/hr., prevailing rate in the community).

No Adjustment Should Be Made

The burden of proof is on the opponent to present specific evidence that a lower amount is appropriate. E.g., United States Football League v. National Football League, 887 F.2d 408, 413 (2d Cir. 1989); Gates v. Deukmejian, 987 F.2d 1392, 1397-98 (9th Cir. 1992) (fee opponent must submit evidence); Brinker v. Giuffrida, 798 F.2d 661, 668 (3d Cir. 1986) ("[T]here is ordinarily no reason for a court to disregard uncontested affidavits of a fee applicant").

Plaintiff does not request an upward or downward adjustment. If a defendant requests such an adjustment, factors identified in Johnson v. Georgia Highway Express,

Inc., 488 F.2d 714, 717-719, may be considered. Hensley, 461 U.S. at 434 n.9 ("[M]any of those factors usually are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate"); U.S. Football League, 887 F. 2d at 415.

1. The time and labor required (see affidavit). Plaintiff submits that the time expended in the prosecution of this action is modest, especially compared with defense fees, due to counsel's experience in consumer protection litigation. In these cases, which are small monetarily but help others because defendant changes its forms and procedures, defendants should not be encouraged to expend resources beyond the value of the case in the hope of reducing plaintiff's fee award.

2. The novelty and difficulty of the question. Even if the case had been straightforward, the lodestar amount may not be reduced. DiFilippo, 759 F.2d at 235.

3. The skill requisite to perform the legal services properly: plaintiff's counsel knows of very few attorneys who purport to be able to litigate plaintiffs' Consumer Credit Protection Act cases.

4. The preclusion of other employment. The time spent on this case was not, and could not be, spent at the same time on other cases.

5. The customary fee is what the plaintiff's counsel requests.

6. Whether the fee is fixed or contingent. In a Consumer Credit Protection Act case, the fee is always contingent -- not on the amount of damages, but on award by the court or agreement of opponent. In a private attorney general case, Congress encourages counsel to bring suit, recognizing that counsel cannot charge the client an hourly fee, because the fee may be out of proportion to the recovery.

If contingent, the fee award should compensate counsel for the risk of receiving no compensation, Blum, 465 U.S. at 903, and to permit counsel "to earn an income that would be competitive with colleagues who get paid win or lose." Bayless v. Irv Leopold Imports, Inc., 659 F. Supp. 942 (D. Ore. 1987) (odometer case). "A contingent fee must be higher than the fee for the same legal services as they are performed. The contingent fee compensates the lawyer not only for the legal services he renders, but also for the loan of those services. The implicit interest rate on such a loan is higher because the risk of default (the loss of the case, which cancels the debt of the client to the lawyer) is much higher than that of a conventional loan." (Posner, Economic Analysis of Law (4th ed. 1992) 534, 567.)

7. Time limitations imposed by the client or the circumstances (none except reasonableness).

8. The amount involved and the results obtained. "[C]ourts generally will not look to the size of the damage award in determining a reasonable attorney's fee in consumer cases." Smith v. Chapman, 436 F. Supp. 58, 66 (W.D. Tex. 1977). Because the statute itself limits damages, the amount of damages awarded does not justify a reduction in the lodestar amount. Cowan v. Prudential Ins. Co., 935 F.2d 522, 527 (2d Cir. 1991).

The Second Circuit rejects the "proportionality" argument as the basis for a fee award. E.g., Kassim v. City of Schenectady, 415 F.3d 246, 252 (2d Cir. 2005); Lunday v. City of Albany, 42 F.3d 131, 134 (2d Cir. 1994); DiFilippo v. Morizio, 759 F.2d 231, 234 (2d Cir. 1985); McCann v. Coughlin, 698 F.2d 112, 129 (2d Cir. 1983). Indeed, fee awards in civil rights and consumer protection matters regularly exceed the plaintiff's recovery. E.g., City of Riverside, 477 U.S. at 580 (awarding $245,450 fees on a $33,350 recovery,

including 143 hours for trial preparation); Grant v. Martinez, 973 F.2d 96, 101 (2d Cir. 1992) (fee award of $500,000 on $60,000 settlement); United States Football League v. National Football League, 887 F.2d 408, 413-15 (2d Cir. 1989) ($5.5 million fee award on $3.00 recovery); Chambless v. Masters, Mates & Pilots Pension Plan, 885 F.2d 1053, 1057-60 (2d Cir. 1989) ($415,000 fee for recovering $2,689.02 monthly pension). Norton v. Wilshire Credit Corp., 36 F. Supp. 2d at 220 (rejecting proportionality in awarding $58,000 in fees in an FDCPA case).

In a Consumer Credit Protection Act case such as this one, the award is often limited by statute. "There is little reason to look to the limited award of statutory damages to determine the reasonableness of attorneys' fees which are generated by the unlimited costs of litigation." Postow v. Oriental Bldg Ass'n, 455 F. Supp. 781, 791 (D.D.C. 1978). See also Bittner v. Tri-County Toyota, 569 N.E.2d 464. 466 (Ohio S.Ct. 1991) (the remedial/consumer protection purpose of the statute is undermined if relatively small dollar amount cases cannot fully compensate the attorneys who take them on).

9. The experience, reputation and ability of the attorney. Plaintiff's counsel has a nationwide reputation in the consumer protection field.

10. The undesirability of the case (see affidavit as to risk of loss and dearth of practitioners in the area).

11. The nature and length of the professional relationship with the client (representation limited to Consumer Credit Protection claims).

12. Awards in similar cases. See discussion above and affidavit for the current market rate.

Purpose of fee award.

Attorneys fees are central to the enforcement of the Consumer Credit Protection Act (of which the FDCPA is a part) by private attorneys general. "The value of an attorney's services is not only measured by the amount of the recovery to the plaintiff, but also the non-monetary benefit accruing to others, in this case the public at large from this successful vindication of a national policy to protect consumers from fraud in the used car business." Fleet Inv. Co. v. Rogers, 620 F.2d 792, 794 (10th Cir. 1980) (odometer law case).

Such fees are particularly important in consumer cases, under the principles discussed by the Supreme Court in Rivera, supra, a civil rights case. "The public interest . . . is not limited to those cases that push the legal envelope; it is perhaps most meaningfully served by the day-to-day private enforcement of these rights, which secures compliance and deters future violations. Congress meant reasonable attorney's fees to be available to the private attorneys general who enforce the law". Quaratino v. Tiffany & Co., 166 F.3d 422, text at n. 7 (2d Cir. 1998). Consumer Credit Protection Act cases also support this proposition. See, e.g., Ratner v. Chemical Bank, 54 F.R.D. 412 (S.D.N.Y. 1972) ($20,000 fees, $100 damages). "[C]ourts generally will not look to the size of the damage award in determining a reasonable attorney's fee in consumer cases." Smith v. Chapman, 436 F. Supp. 58, 66 (W.D. Tex. 1977).

A defendant should not be encouraged to litigate in the expectation that the Court will reduce the plaintiff's fee request, even though the defendant's fees to its own attorney are not similarly scrutinized and reduced by the Court. Cf. Eddy v. Colonial Life Ins. Co., 59 F.3d 201, 207-08 (D.C. Cir. 1995) (a fee award deters noncompliance with the law and

encourages settlement); Benavides v. Benavides, 11 Conn. App. 150 (1987) (same).

An inadequate award diminishes the inducement created by fee-shifting statutes, and undermines the goal of promoting private representation in FDCPA actions. In language which could appropriately be applied to FDCPA actions, the Second Circuit noted:

> A plaintiff who is successful in establishing certain practices as violative of his constitutional rights will deter officials from continuing this conduct, and thereby help assure that others are not subjected to similar constitutional deprivations. This deterrent effect of successful §1983 actions is wholly independent of the relief which the plaintiff seeks or is ultimately awarded, and therefore it is inappropriate to condition attorney's fee awards on the nature of the relief granted.

McCann v. Coughlin, 698 F.2d 112, 129 (2d Cir. 1983).

An award should be made at a rate which recognizes the vindication of public policy expressed in the FDCPA. "The award of attorney's fees, as a practical matter, is a critical and integral part of [the creation of a system of private attorneys general]." James v. Home Constr. Co., 689 F.2d 1357, 1359 (11th Cir. 1982).

Settlement efforts.

It is unquestionably in the best interests of the Court and the parties to settle rather than litigate. See Janneh v. GAF Corp., 887 F.2d 432 (2d Cir. 1989). "In a very real sense, all of the parties -- and the court as an institution -- win when litigation is settled amicably short of trial." Mathewson Corp. v. Allied Marine Ind., Inc., 827 F.2d 850, 857 (1st Cir. 1987).

Defendants scorned plaintiff's persistent efforts at settlement of this matter in a disproportionate effort to avert exposure to limited damages. This Court can bolster such settlement efforts for the future by awarding the full amount requested.

## CONCLUSION

Defendant attorneys violated federal law by not complying with the well-established FDCPA obligations of an attorney. Plaintiff is the "chosen instrument of Congress to vindicate a policy that Congress considered of the highest priority." This litigation accomplished the purposes of the FDCPA. Attorney's fees encourage defendants to comply with the FDCPA, as well as providing the consumer an incentive and the financial ability to bring FDCPA suits. Postow, 455 F. Supp. at 785, 786. Fees should be awarded as requested.

Plaintiff submits that the fee application is reasonable in time expended and amount requested. She respectfully submits that it should be awarded as requested.

THE PLAINTIFF

BY____/s/ Joanne S. Faulkner____
JOANNE S. FAULKNER ct04137
123 Avon Street
New Haven, CT 06511-2422
(203) 772-0395
j.faulkner@snet.net

Certificate of Service

I hereby certify that on July 19, 2005, a copy of the foregoing was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

____/s/ Joanne S. Faulkner____
JOANNE S. FAULKNER ct04137

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

EVELINE GOINS

v.                                                    CASE NO. 3:02CV 1069 (WIG)

JBC & ASSOCIATES, P.C.
JACK H. BOYAJIAN
MARVIN BRANDON

FEE AFFIDAVIT

Joanne S. Faulkner states:

1. I am an attorney licensed to practice before the United States Supreme Court, the Second, Fifth, Sixth and Seventh Circuit Courts of Appeals, the United States District Courts for the District of Connecticut and the Southern and Eastern Districts of New York, and all Connecticut courts.

2. I represent the plaintiff and submit this affidavit in support of a request for attorneys fees. Blum v. Stenson, 465 U.S. 886 n.5 (1984).

3. I was admitted to practice in New York in 1963, and in Connecticut in 1967. From 1967 to 1985, I was a staff attorney with New Haven Legal Assistance Association, Inc., a nonprofit corporation. I am in private practice, restricted to consumer-related matters, preferably for persons who cannot afford to pay a lawyer.

4. I have been involved in groundbreaking nationally reported cases, including Heintz v. Jenkins, 514 U.S. 291 (1995); Connecticut v. Doehr, 501 U.S. 1 (1991); Nelson v. Chase Manhattan Mortgage Corp., 282 F.3d 1057 (9th Cir. 2002); Romea v. Heiberger & Assoc., 163 F.3d 111 (2d Cir. 1998); Bass v. Stolper, Koritzinsky, Brewster & Neider, S.C., 111

Case 3:02-cv-01069-WIG    Document 69    Filed 09/08/2005    Page 2 of 7

F.3d 1322 (7th Cir. 1997); Charles v. Lundgren & Associates, P.C., 119 F.3d 739 (9th Cir. 1997); Newman v. Boehm, Pearlstein & Bright, Limited, 119 F.3d 477 (7th Cir. 1997); Poirier v. Alco Collections, Inc., 107 F.3d 347 (5th Cir. 1997); Avila v. Rubin, 84 F.3d 222 (7th Cir. 1996); Clomon v. Jackson, 988 F.2d 1314, 1321 (2d Cir. 1993).

5. I have had extensive experience for more than thirty five years in consumer matters, including litigation, conducting seminars and writing articles. Even before Heintz v. Jenkins, 514 U.S. 291 (1995), I had national renown for my expertise in consumer cases. I am frequently consulted by consumer practitioners from all over the country. In October, 2002, I received the prestigious Vern Countryman Award from the National Consumer Law Center "for excellence and dedication in the practice of consumer law on behalf of low-income consumers."

6. I am a past chair of the Consumer Law Section of the Connecticut Bar Association and was the editor of its newsletter for over ten years until 1998. I was a member of the Federal Reserve Board's Consumer Advisory Council. I was on the Board of Directors of the National Consumer Law Center and am presently a trustee thereof. I am a founding member of the National Association of Consumer Advocates, Inc.

7. I have lectured for the Connecticut Bar Association, the National Consumer Law Center, the National Association of Consumer Advocates, the New Haven County Bar Association, and other entities on consumer laws, and have published articles in those fields. I am a contributing editor of the National Consumer Law Center's Truth in Lending Manual, Automobile Fraud Manual, Credit Discrimination Manual, Fair Credit Reporting Act Manual, Fair Debt Collection Manual, and supplements. I served the Connecticut

2

Law Revision Commission as a member of the Advisory Committee on UCC Article 2A, and on a Consumer Leasing Committee.

8. My work in connection with these consolidated cases is shown on the schedules attached hereto. I prepared time records contemporaneously with performance of the work. The time records do not duplicate work performed in any other file; they do not include non-legal tasks such as filing or copying, minor calls such as defendant's multiple calls seeking consent to extensions of time, calls from or to client to report on progress.

9. Less than a handful of Connecticut attorneys are willing to accept consumer cases because of the special expertise required and the risk of nonpayment.

10. I am requesting attorney's fees at the rate of $350 per hour. I believe that the award requested is reasonable, and reflects the lowest current market rate in the community of my peers for federal litigation. The rate was awarded me in Petrolito v. Arrow Financial Services, 3:02cv484 (JCH) (Doc. No. 148) (D. Conn. July 28, 2005). In Nelson, *supra*, the client paid for my services at $500 per hour. I have been awarded fees at $300 per hour for over two years, e.g., in Cashman v. Ricigliano, Civil No. 3:02CV1423 (MRK) (D. Conn. Apr. 29, 2005); Johnson v. Consumer Education Services, Inc., Civil No. 3:03CV 1115 (AWT) (D. Conn. Feb. 7, 2005); Pabon v Recko, Civil No. 3:00CV 380 (DJS)(TPS) (D. Conn. Dec. 30, 2004) Doc. No. 171; Murphy v Kwiatek, Civil No. 3:03cv173 (MRK) (WIG) (D. Conn. Oct. 5, 2004) Doc. Nos. 15, 17; Harvey v. USCB, Inc., Civil No. 3:02CV1770 (DJS) (D. Conn. Jan. 31, 2003) ($300 per hour); Wrightington v. Nationwide Capital Recovery, Civil No. 3:02CV 1175 (JBA) (JGM) (D. Conn. Jan 6, 2003) ($300 per hour). See also Orchano v. Advanced Recovery, Inc. (1998) ($275 per hour); Nickerson v.

3

J&P Credit Services, Civil No. 3:99CV1876 (DJS) (TPS) (D. Conn. Mar. 29, 2000) ($275

per hour granted as requested with finding that $275 "is substantially less than that

Case 3:02-cv-01069-WIG   Document 69   Filed 09/08/2005   Page 4 of 7

normally commanded by Ms. Faulkner").

    11. Hourly billing rates of Connecticut private counsel with which I am familiar are:

First quarter of 1995:

| | | | |
|---|---|---|---|
| Robert Allen | law degree 1973 | litigation, consumer | 220 |
| John Droney | law degree 1973 | litigation | over 300 |

Third Quarter of 1997:

| | | | |
|---|---|---|---|
| Richard Beider | law degree 1965 | litigation | 350 |

Third quarter of 1998:

| | | | |
|---|---|---|---|
| David Faulkner | law degree 1964 | trusts & estates | 285 |

Third quarter of 1999

| | | |
|---|---|---|
| Hon. Stefan R. Underhill | 14 years' practice | 340 |

2005

| | | |
|---|---|---|
| Bernard Kennedy | admitted 1985 | 300 |
| Daniel Blinn | admitted 1987 | 300 |

    12. Jonathan Einhorn, a lawyer admitted in 1974, was awarded $250 per hour in Gyadu v. Giordano, Civil No. 3:94CV1144 (JBA), 3 Conn. Ops. 410 (D. Conn. March 14, 1997).

    13. The Second Circuit commented favorably on my experience, reputation and ability, noting the "eight federal district court cases in Connecticut in 1993 and 1994 alone" in which Mrs. Faulkner had been awarded fees at $200 per hour. Orchano v.

4

Advanced Recovery, Inc., 107 F.3d 94, 100 (2d Cir. 1997).

15. In Connecticut State Department of Social Services v. Thompson, 289 F.Supp.2d 198 (D.Conn. 2003), the court awarded fees at up to $375 per hour. Typical historical market rates in Connecticut are shown by older awards to other counsel in Lieberman v. Dudley, Civil No. 3:95CV2437 (AHN) (D. Conn. July 27, 1998) ($250/hr); Wallace v. Fox, Civil No. 3:96CV772 (D. Conn. May 11, 1998) (awarding blended rate of $345.57 per hour inclusive of a 1.5 multiplier to several counsel and paralegals in shareholder derivative action); Skubel v. Sullivan, 1998 WL 136176 at *3 (D. Conn. Mar. 11, 1998) ($250/hr); Calovine v. City of Bridgeport, Civil No. 3:94CV 379 (WWE) (D. Conn. Feb. 4, 1998) ($250/hr for a "relatively low number of hours billed:" 179.7 hours); CG v. New Haven Bd. of Education, 988 F. Supp. 60, 69 (D. Conn. 1997) ($250/hr); Mrs. B. v. Milford Bd. of Educ., Civil No. 3:93CV1723 (DJS) (TPS) (D. Conn. Nov. 4, 1997) ($250/hr consistent with prevailing rate in Connecticut); Evans v. State of Connecticut, 967 F. Supp. 673, 691 (D. Conn. 1997) (prevailing 1996 rate is $200 to $225; award at $200/hr despite some criticism of attorney's performance); Russo v. Coppola, Civil No. 3:93CV1734 (AHN) (D. Conn. Feb. 6, 1995) ($250/hr); Kintz v. City of New Haven, 1993 WL 276945 at *3 (D. Conn. June 18, 1993) ($250/hr), aff'd 29 F.3d 622 (2d Cir. 1994); Friends of Animals, Inc. v. Hirsch, Civil No. 3:90CV621 (WWE) (D. Conn. Jan. 20, 1993) ($250/hr); Gonzalez v. Town of Stratford, 830 F. Supp. 111, 113 (D. Conn. 1992) ($250/hr).

Goins v JBC, 3:02CV 1069 (MRK)

| Date | Description | Hours | Amount |
|---|---|---|---|
| 06/18/02 | Draft summons, complaint cover | 0.75 | 262.50 |
| 06/22/02 | acknl, mail serv | 0.50 | 175.00 |
| 06/27/02 | offer setl $3,000 | 0.25 | 87.50 |
| 07/30/02 | to process server | 0.25 | 87.50 |
|  | offer setl $3300 | 0.00 | 0.00 |
| 08/23/02 | M/ reimb fee | 0.00 | 0.00 |
| 10/01/02 | revise & file planning report | 0.25 | 87.50 |
| 10/07/02 | Draft discovery | 0.75 | 262.50 |
| 12/16/02 | setl conference Def did not attend | 2.50 | 875.00 |
| 12/19/02 | M/compel & M/Sanc re Setl Conf | 0.50 | 175.00 |
| 02/19/03 | M/ reconsider denial of M compel | 0.30 | 105.00 |
| 03/15/03 | Rply spt M/Reconsid | 0.50 | 175.00 |
| 03/17/03 | setlement conf (1/2) | 1.75 | 612.50 |
| 05/12/03 | notice of receipt of discovery | 0.10 | 35.00 |
| 06/12/03 | draft setl conf memo | 0.60 | 210.00 |
| 08/02/03 | review file & discovery, notes for depo; dep | 1.50 | 525.00 |
| 09/03/03 | beg review docs, depo prep | 1.50 | 525.00 |
| 09/04/03 | review other dep, continue dep prep | 2.25 | 787.50 |
| 09/05/03 | review website; names on ltrs | 1.00 | 350.00 |
|  | setl ltr 3 cases | 0.75 | 262.50 |
| 10/29/03 | notice depo | 0.20 | 70.00 |
| 11/19/03 | production response (1/2 time) | 0.30 | 105.00 |
| 12/09/03 | begin review file for SJ; aff to Goins | 1.00 | 350.00 |
| 12/13/04 | Begin draft MSJ | 4.50 | 1575.00 |
| 12/17/03 | Opp extns & Opp compel | 1.24 | 434.00 |
| 12/31/04 | same | 0.50 | 175.00 |
| 01/05/04 | status conference | 0.50 | 175.00 |
| 01/16/04 | renotice depo | 0.20 | 70.00 |
| 01/17/04 | revise depo notice | 0.10 | 35.00 |
| 01/26/04 | Prep Boyajian depo | 4.00 | 1400.00 |
| 01/27/04 | Boyajian depo | 5.50 | 1925.00 |
| 02/21/04 | respond to interrogatory | 0.50 | 175.00 |
| 02/25/04 | begin draft rply spt sum jdg | 2.00 | 700.00 |
| 02/26/04 | draft last 4 sections of rply | 1.50 | 525.00 |
| 02/27/04 | revise reply | 0.50 | 175.00 |
| 08/17/04 | oral arg, prep, setl discussions | 3.50 | 1225.00 |
| 08/26/04 | review disc, depos, disc, resrch; beg drft | 3.80 | 1330.00 |
| 09/11/04 | research & draft M/reconsider | 4.00 | 1400.00 |
| 10/09/04 | rply spt reconsider | 0.50 | 175.00 |
| 05/06/05 | tel conf w/court | 0.17 | 59.50 |
| 09/06/05 | calls & emails re setl $1500 + fee app | 0.25 | 87.50 |
| 09/07/05 | begin update fee research, revise fee app | 0.8 | 280.00 |
| 09/08/05 | review time records billing jdg | 0.5 | 175.00 |
|  | prep motion for fees & costs | 1.00 | 350.00 |
|  | EST additional time, rply,hearing | 2.00 | 700.00 |

filing fee $150
parking     6